MARYLAND INDEMNITY AND FIRE INSURANCE EXCHANGE *v.* STEERS ET AL.

[No. 101, September Term, 1959.]

*Decided February 8, 1960.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Joseph P. Rieger,* with whom was *Joseph W. Spector* on the brief, for the appellant.

*Kenneth C. Proctor,* with whom were *W. Lee Thomas* and *Benjamin C. Howard* on the brief, for the appellees Romaine W. Jacobs and husband.

No brief and no appearance for the appellee Kenneth G. Steers.

BRUNE, C. J., delivered the opinion of the Court.

This case involves two questions arising under an automobile insurance policy issued under an assigned risk plan. The first is one of misrepresentation, the second is one of coverage under the liability insurance provisions of the policy. Maryland Indemnity & Fire Insurance Exchange (Indemnity), the appellant, filed a bill of complaint in equity in the Circuit Court of Baltimore County, (i) seeking a declaratory decree that Indemnity was not obligated under an automobile liability insurance policy issued by it to Kenneth S. Steers (Steers), one of the appellees, to pay damages suffered by the other appellees, Romaine W. and Orville Jacobs, her husband, (the Jacobs) in an automobile accident in which Mrs. Jacobs and Steers were involved, and (ii) also seeking to enjoin the appellees from proceeding with a suit at law brought by the Jacobs against Steers for damages arising out of the accident, until the bill for declaratory relief should have been adjudicated. The Circuit Court sustained a demurrer to the bill insofar as it sought an injunction, but deferred ruling upon the issue of coverage under the insurance policy until after the suit between Steers and the Jacobs had been concluded. That suit resulted in judgments for the Jacobs, and this suit for the construction of the policy and determination of coverage was then heard.[1] After considering an agreed statement of facts and the testimony of two witnesses the lower court dismissed the bill with prejudice. The trial court found that the automobile involved in the accident was in fact a replacement of the insured automobile and therefore held that it was covered by the policy. Indemnity appeals from the decree dismissing its bill.

Indemnity challenges the decision of the trial court on two

---

1. No question has been raised as to equitable jurisdiction.

grounds. It first says that the policy was void at the time of the accident because there had been a material misrepresentation as to the automobile covered when the renewal policy which was in force at the time of the accident was issued in December, 1956. Secondly, it argues that, even assuming that the policy was not void, the automobile owned and driven by Steers which was involved in the accident was not a replacement vehicle for the automobile described in the policy and therefore was not insured under the policy. The Jacobs contend that there was no material misrepresentation (if there was any misrepresentation at all), and that the car involved in the accident was a replacement of the automobile originally insured. Steers takes no part in the appeal.

The accident in which Mrs. Jacobs was injured occurred on November 1, 1957, while Steers was driving a 1955 Ford. At the time of the accident Steers had an automobile liability insurance policy which the appellant, Indemnity, had issued to him in December, 1956, is a renewal of a one-year policy issued in December, 1955. Both were issued as a result of Indemnity's participating in the Maryland Assigned Risk Plan.[2] When this insurance was issued Steers owned and operated a 1946 Oldsmobile which was the automobile named in the policy. The policy had a provision as to newly acquired automobiles which made the insurance applicable to such automobiles and waived the requirement of notice of the acquisition thereof (under the liability coverage applicable here) "if the newly acquired automobile replaces an owned automobile covered by this policy." Sometime prior to April, 1956, according to Steers' testimony, the Oldsmobile became inoperative. However, the license for it was renewed on April 1, 1956, because Steers expected to get it running again. After using public transportation for several weeks, Steers purchased, on May 15, 1956, a 1946 Dodge which he regis-

2. The assigned risk plan was permitted by Code (1951), Art. 48A, § 200 (15) (which became § 223 (15) in the 1957 Code), but no insurance company was required to participate. However, Acts of 1959, Ch. 292, makes participation in such a plan a prerequisite to writing automobile bodily injury and property damage liability insurance in Maryland.

tered in his name and for which he obtained license plates. Thereafter he used the Dodge, and the Oldsmobile was left standing in the street. In December, 1956, Steers accepted the renewal policy issued by Indemnity. This policy repeated the designation of the Oldsmobile as the insured automobile, just as it had been in the original, and Steers did nothing to correct this. In March, 1957, Steers renewed the license plates on the Dodge but did not do so on the Oldsmobile. By this time, as Steers testified, and as the trial judge found, the Oldsmobile was physically inoperable. After its registration expired on March 31, 1957, it also became illegal to operate it. On March 20, 1957, Steers sold the Dodge and shortly thereafter bought a 1955 Ford. The current license plates which had been obtained for the Dodge were then transferred to the Ford. This transaction was not brought to the attention of Indemnity. In October, 1957, Steers bought a 1946 Pontiac for $30 which he never registered, and according to his testimony he bought it simply with the intention of removing and selling the salable parts of the car. Steers was a garage attendant at a service station. There is nothing to show that he ever used the Pontiac as a car or that he ever intended to do so. One week after the accident occurred, on November 7, 1957, Steers requested Indemnity to designate the Ford as the insured automobile in place of the Oldsmobile. This was done without any demand for the payment of an additional premium, although notice of the accident appears to have been given previously.

Indemnity's first argument is that the renewal policy of December, 1956, was void *ab initio*, because at the time of the renewal he represented to Indemnity that the automobile to be insured was the Oldsmobile, while actually the car he was driving at that time was the Dodge. The Oldsmobile was described as the vehicle insured in the original policy and this was then true. This description was carried over into the renewal policy when Indemnity prepared the latter, and Indemnity had no knowledge of any change at that time. The policy had a provision by which the insured agreed that "the statements in the declarations are his agreements and representations". Since the designation of the car insured was by

a declaration, Indemnity contends that the listing of the Oldsmobile as the automobile covered was a misrepresentation by Steers. We shall assume (without deciding) that this contention is correct. Indemnity argues that this constituted a material misrepresentation.

The usual test of whether or not a representation is material is whether it concerns a fact that would affect the insurer's decision in entering into the contract and in estimating the degree or character of the risk (which, of course, affect the premium). *Monumental Life Ins. Co. v. Taylor,* 212 Md. 202, 213, 129 A. 2d 103; *John Hancock Mutual Life Ins. Co. of Boston, Mass. v. Adams,* 205 Md. 213, 221, 107 A. 2d 111; 12 Appleman, *Insurance Law & Practice,* § 7294 (1943). We think it is clear from the insurance contract itself and from other evidence in the case that the failure to identify correctly the insured car at the time of the renewal of the policy was not a material misrepresentation. Most important of all, we think, is the fact that the insurance policy itself contained a provision which made it applicable to any newly acquired vehicle which replaced an insured automobile, and provided that the liability insurance thereby afforded and here involved should become effective as to the newly acquired automobile without notice of the replacement.

Looking at its provisions in some detail we note that the policy listed a number of coverages which were available, but that it afforded protection as to only those for which a premium was charged. The only coverages which Steers thus obtained were for bodily injury liability, referred to as "coverage A", and for property damage liability, referred to as "coverage B". Another form of liability insurance—designated as "Automobile Medical Payments", referred to as "coverage C", was available, but Steers did not have this. Other available coverages not afforded by Steers' policy included fire, theft and collision, as to which the value of the insured vehicle would obviously be pertinent to the risk and the premium therefor.

The policy here in suit applied to a "Newly Acquired Automobile" which it defined (so far as here material) as "an automobile, ownership of which is acquired by the named in-

sured or his spouse * * * if (i) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (ii) the named insured or such spouse notifies the company within thirty days following such delivery date; but such notice is not required under coverages A, B and division 1 of coverage C if the newly acquired automobile replaces an owned automobile covered by this policy." The newly acquired automobile clause also provided that the insurance with respect to such an automobile should not apply to any loss against which the insured or his spouse had other valid and collectible insurance and that the insured should pay any additional premium required because of the application of the insurance to the newly acquired automobile.

The clause above quoted, which defines a newly acquired automobile and deals with notice pertaining thereto is so phrased as to make it appear that there is no requirement at all for giving notice of a replacement under a policy which covers only one car and not all cars owned by the insured and his spouse. Even if we assume (which is somewhat difficult) that the requirement for notice is applicable where the policy was issued to cover only one car, we find that any requirement for notice under the A ("Bodily Injury Liability") and B ("Property Damage Liability") coverages which Steers had, and which were all that he had, was expressly waived. It thus appears that insofar as liability insurance was concerned, Indemnity was almost, if not completely, indifferent to the substitution under the policy of an automobile acquired as a replacement for the vehicle already described. Either Indemnity required no notice at all under this policy, or it waived notice entirely; and at most it reserved merely the right to require the insured to pay any additional premium which might be due because of the replacement. It is difficult to believe that a misstatement with regard to a matter as to which the insurer was so indifferent could constitute a material misrepresentation.[3]

---

3. We assume (without deciding) that the insurer would have

Almost by way of emphasizing the immateriality of the misstatement here involved, the record shows that Steers had the Ford substituted in the policy for the Oldsmobile shortly after the accident, without any payment or demand for payment of an additional premium. Whether any additional payment might have been required does not appear. In any event, it seems clear that Steers' failure to designate the Ford as the insured vehicle did not affect Indemnity's own appraisal of the risk, and therefore that Indemnity itself did not regard this as a material misrepresentation. Furthermore, an examination of the non-waiver agreement under which Indemnity undertook the investigation and defense of the Jacobs' suit against Steers, shows that misrepresentation is not specifically mentioned as one of the grounds for the insurer's claim of nonliability, although nonnotification and failure to request a substitution are so mentioned.

The second argument of Indemnity is that the Ford actually was not a replacement for the Oldsmobile. The finding on this issue was a finding on the evidence and will not be reversed unless clearly erroneous. Maryland Rules, Rule 886 a. The court stated as its ultimate finding of fact that the Ford replaced the Oldsmobile. It seems that the court found that first the Dodge replaced the Oldsmobile, and that later the Ford replaced the Dodge. Indemnity's liability under the policy would be the same, we think, in this sequence of events as if the Ford had replaced the Oldsmobile directly.

The appellant cites several cases in support of its claim that the Ford was not a replacement vehicle under the terms of the policy. In *Mitcham v. Travelers Indemnity Co.*, 127 F. 2d 27 (4th Cir.), in which the opinion was written by Judge Soper, it was held that when the automobile described in the policy had been placed with a dealer for sale, it was not replaced by a newly acquired automobile because the

been entitled to assert such rights because of a change in cars, though the testimony of an employee of Indemnity leaves some doubt as to whether Indemnity could have refused to renew the policy during the three years for which the Steers' risk was assigned to it. If it had no such right, the change in cars would seem quite immaterial.

original, designated car could still be used by the owner. As long as this was the situation, in the event of an accident involving the named automobile, the insurer could not have shown that the named car was no longer covered by the insurance policy, and thus have avoided liability. However, in the instant case, there was ample evidence from which the lower court could find, as it did, that at the time of the acquisition of the Dodge, the Oldsmobile was in fact inoperable; and therefore the problem of determining which automobile was covered by the policy was different from the problem in the *Mitcham* case. Much closer to the instant case on the facts, is *Merchants Mut. Casualty Co. v. Lambert,* 90 N. H. 507, 11 A. 2d 361. The court in that case held that the evidence sustained the finding of the lower court that the newly acquired automobile was purchased to replace the named automobile for the use to which the named automobile had been put. The evidence indicated there, as here, that the car was mechanically inoperable even though the owner retained possession of the car and it still had license plates on it. The *Mitcham* case distinguished this case on the ground that in *Mitcham* the named automobile was still operable. The factual difference between the present case and *Mitcham* is even greater than that between *Merchants* and *Mitcham,* for in this case the original car was not only physically, but also legally, inoperable at the time when the Ford was acquired as a replacement. In these circumstances, we regard the *Merchants* case as strongly in point. We think that its reasoning is sound and that it should be followed. We are of the opinion that the trial court was correct in finding that the Ford was a newly acquired car which had replaced the car described in the policy, and in holding that it was, therefore, covered by the policy.

The other cases cited by appellant are also, on their facts, distinguishable from the instant case. *Utilities Ins. Co. v. Wilson,* 207 Okla. 574, 251 P. 2d 175, involved a truck which was owned by the insured when a policy on another truck owned by the insured was issued. The court held that the truck previously owned could not be covered by the "newly ac-

quired" clause of the policy. In *Ohio Casualty Ins. Co. v. Nelson,* 49 Wash. 2d 748, 306 P. 2d 201, there was no evidence of any disposition of the vehicle named in the policy, and the court therefore held that the lower court was incorrect in finding that a newly acquired automobile was a replacement for the named vehicle. Similarly, in *Brown v. State Farm Mutual Automobile Ins. Co.,* 306 S. W. 2d 836 (Ky.) the court rejected an attempt by the insured to have covered under the newly acquired clause an automobile which he owned at the time he took out insurance on another car.

Before closing we also note the argument made by Indemnity that as long as the named automobile is retained by the insured, he might still become liable for some damage or injury caused by it, even though it may not be capable of being driven on highways under its own power. This argument is answered in the *Merchants* case, *supra,* 90 N. H. at 510, where the court said that the insurance company could easily protect itself against such an occurrence by providing that the insurance would not be transferred to the newly acquired automobile until the named automobile had been disposed of. We may add that such a possibility does not seem sufficiently great to overcome the fact that the newly acquired car has actually replaced the old one in use.

For the above reasons we conclude that the trial court was correct and affirm the decree.

*Decree affirmed, with costs.*