## UNION ASSURANCE SOCIETY LIMITED, ETC. *v.* GARVER

[No. 32, September Term, 1960.]

*Decided November 10, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Charles Markell, Jr.,* with whom was *A. Earl Shipley* on the brief, for appellant.

*Stanford Hoff,* with whom were *Sponseller & Hoff* and *Donald C. Sponseller* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellee, holding a fire and theft policy of fleet insurance upon his motor vehicles, including a 1949 Fruehauf, insulated, stainless steel, milk tank trailer, put in a claim when the trailer was seriously damaged in a fire which destroyed his garage on January 4, 1958. Although the original cost of the vehicle was nearly $8,000, the limit of recovery under the policy was $2,000. The value of the trailer prior to the fire was estimated at about $3,500. After the fire it was "junk * * * hardly worth fixing." The appellee described the damage to the truck as follows: "It was burnt completely up, that is, everything had burnt all off of it including all of the tires, the lumber and the big joist in the garage had fallen down on it, bent it, banged it up, in fact, it looked like a burnt tomato can had been in a fire." When the claim was not paid, the policyholder filed suit and recovered a judgment for $2,000 in a jury trial. The chief contention on appeal is that there should have been a directed verdict because of an alleged breach of a cooperation clause in the policy.

The appellant concedes that the fire occurred, and that it was seasonably notified of the claim. Charles Smith, an adjuster representing the Company, called in due course. Smith asked Garver to get an estimate on the cost of repairing the trailer. Garver obtained a detailed estimate, in letter form, from The Brodix Corporation in Dunellen, New Jersey, a

dealer in milk tank trailers. He sent the original letter to Smith. The letter, based on an inspection made by Mr. Walster and signed by W. V. Reddeman, quoted a total price of $2,625, F.O.B. Dunellen, for complete repairs, including restoration of the bent and broken insulation plates, but excluding tires. A carbon copy of the letter was offered in evidence over objection.

Some weeks later Garver called Smith on the phone. Smith said he still had to get some salvage bids. He called Smith a week later. Smith said: "that trailer of yours is a total loss. * * * You've got the cheapest estimate, * * * But I got some salvage bids and the high bid was a hundred and fifty dollars for what's left". Smith offered him $1,850 in settlement, to which Garver agreed. Garver asked if it would be all right if he patched the trailer up to haul peas. Smith told him he could junk the trailer or do what he pleased with it. Garver testified that a few weeks later he took the trailer to Brodix, and had it partially repaired so he could use it to haul peas. It was not re-insulated, or suitable for hauling milk. Some of the repairs were made in his own shop. He produced a bill from Brodix for $532.

The appellant's case seems to center upon this bill for partial repairs. The appellee testified on the stand that he thought the bill was made out by Mr. Walster "up at the Dunellen, New Jersey plant." At another point he testified the bill-head form was in blank when Walster brought it to Garver's house and made it up there. The court ruled that the paper was not admissible, because irrelevant. Nevertheless, counsel for the appellant sought to introduce a statement by the witness, in a pretrial deposition or examination under oath, wherein the witness stated that he had received the bill or document in the mail. Apparently, the appellant sought to challenge the authenticity of the $532 bill.

We fail to see the relevance of the inquiry. Garver's testimony is uncontradicted that Smith had agreed with him on an adjustment of the claim, and that he might do as he pleased with the damaged trailer. If this be true, the authenticity of the subsequent bill would be of no concern to the appellant. Garver's statement that Smith told him the estimate of Brodix

for complete repairs was the lowest was likewise uncontradicted. The correctness or authenticity of the estimate of complete repairs submitted by Brodix is not challenged. Even if we assume the bill for partial repairs was germane and admissible, the conflict between Garver's recollection at the trial and in the pretrial deposition would not make his testimony on the stand incredible, and credibility would be a matter for the jury. Whether Walster made out the bill in New Jersey or in Maryland would not seem to affect its authenticity in any event. In short, we find no basis in the instant case upon which a breach of the cooperation clause as a matter of law could be predicated. We find it unnecessary, therefore, to discuss the legal questions raised as to whether a cooperation clause has any application except to liability policies and to matters related to preparation for trial, or trial, of a case. In *Indemnity Ins. Co. of N. A. v. Smith,* 197 Md. 160, 164, it was said: "to relieve an insurer of liability on the ground of lack of co-operation, discrepancies in statements made by the insured must be made in bad faith and must be material in nature and prejudicial in effect."

We find no merit in the claim that the estimate from Brodix was improperly introduced in evidence. According to the uncontradicted testimony of Garver, he obtained the estimate at Smith's request, and mailed it to Smith. Prior to offering the carbon copy, counsel for the appellee called upon counsel for the appellant to produce the original, but it was not produced. The objection was simply that someone from Brodix should have been called "if they wanted to prove damages," not that the copy was not genuine. There was no denial that the appellant received the original or requested that it be sent. If we assume that the letter of a third person would be hearsay and inadmissible to establish the cost of repairs, we find no prejudice, for there was other evidence on the amount of loss and damage. Indeed, the uncontradicted testimony is that the agent of the Company stated that the Brodix estimate was the lowest. It may be inferred that he had obtained other estimates. There is nothing in the case to suggest that the trailer could have been repaired for less than the coverage named in the policy.

*Judgment affirmed, with costs.*