# WARREN AND WARREN v. HARDWARE DEALERS MUTUAL FIRE INSURANCE COMPANY AND THORNE

[No. 480, September Term, 1965.]

472

*Decided November 17, 1966.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER and FINAN, JJ.

*Lansdale G. Sasscer, Jr.,* with whom were *Sasscer, Clagett, Powers & Channing* on the brief, for appellants.

*Leonard L. Lipshultz,* with whom were *Sol Friedman* and *Friedman & Lipshultz* on the brief, for appellees.

HORNEY, J., delivered the opinion of the Court.

The question on this appeal is whether the action of the lower court, in deciding prior to a trial of the issue of negligence that the insurer was not obliged to defend the damage suit arising

out of a motor vehicle accident, was premature under the facts and circumstances of this case. We think it was.

When Joyce Warren and Charles R. Warren (the plaintiffs-appellants) filed suit for personal injuries against James L. Thorne (the insured) who had liability insurance issued by the Hardware Dealers Mutual Fire Insurance Company (the insurer and intervenor-appellee), the insurer, alleging the uncooperativeness of the insured, intervened and sought declaratory relief with respect to its obligation to defend the suit and its liability to pay a judgment against the insured defendant.

The insured promptly notified the insurer of the accident and, upon being interviewed, gave an investigator a written statement on September 30, 1963, to the effect that he was on his proper side of the road at the time of the accident; that he had just left the home of an air force sergeant he inadvertently misnamed; that he had consumed two bottles of beer in the morning prior to the happening of the accident in the evening of the same day; and that he was then trying to locate a named person he had been informed had witnessed the accident. Subsequently, the investigator conferred with the police (from whom was obtained information contrary to that given by the insured who claimed he had not been drinking immediately prior to the accident); inquired as to the extent of the injuries sustained by the occupants of the other automobile; attended the traffic hearing (which had been postponed once due to the absence of the insured); and conducted further investigations for the insurer. Thereafter, however, the investigators, in attempting to elicit further information regarding the witnesses the insured had first mentioned and other purported witnesses the insured had told the investigator about in the meantime, called the insured on numerous occasions both at his home and at his place of employment but was never able to speak with the insured or get him to return the calls as requested. On other occasions the investigator made several appointments with the insured at various locations but he failed to keep any of them. Yet, on August 28, 1964, approximately five months after the filing of the damage suit, the insured gave another written statement to a second investigator, who, with the assistance of the insured, was able to locate and obtain a statement from the previously mis-

named air force sergeant (who, however, contradicted the insured as to the time the insured had visited him on the day of the accident). Other information was also obtained from other persons who had seen the insured prior to or at the scene of the accident, including corroboration of the information received earlier from the police to the effect that the insured had been drinking prior to the accident. But as the time for trial (August 30, 1965) approached, a third investigator for the insurer spent more than a week trying to locate the insured but was never able to ascertain his whereabouts.

Other than the above, the insured failed to send the insurer a copy of the declaration filed in the damage suit and the summons which had been served on him, but the possible dire effect of the omission was alleviated by the attorney for the plaintiffs sending a copy of the pleadings to the attorney for the insurer.

Then, too, the insured (who by this time was aware that the insurer was not pleased with his prior lack of cooperation) failed to appear in the office of the attorney on October 13, 1964, to discuss the case before the filing of the declaratory judgment proceeding, but the registered letters requesting the appointments, not having been delivered to the addressee, were returned to the sender. When, however, the attorney for the insurer wrote the insured about a month later enclosing the pleadings in the declaratory judgment proceeding and copies of the returned letters, the insured telephoned the office of the attorney and stated that he was having transportation difficulties, but he never did comply with the request for an interview.

And while the insured did not go to the office of the attorney for the insurer after the filing of the declaratory judgment proceeding (of which he had been advised by mail rather than by service of process), he was never actually requested to do so. Moreover, he did not reply to any of the letters informing him that the insurer no longer represented him and that he should retain an attorney to file a plea for him in the damage suit. Nor did the insured respond to letters, addressed to him by the attorney the insurer engaged to file a general issue plea to forestall the obtention of a judgment by default, suggesting that the insured employ his own attorney to try the case and inform-

ing him that the attorney would like to confer with him about the case.

When the declaratory judgment proceeding and damage suit came on for hearing and trial, the tort action was continued and only the additional action was heard. At the conclusion of the hearing the lower court (as hereinbefore stated) ordered that the insurer was not obliged to defend the original action or pay a judgment resulting from the trial thereof.

The basic question as to whether the decision of the lower court was premature necessarily depends on whether the lack of cooperation on the part of the insured was such as to have resulted in prejudice to the insurer as of the time of the declaratory judgment hearing.

A showing of prejudice has not always been required to absolve the insurer from liability. Prior to 1936, our predecessors held that no prejudice need be shown when the insured failed to immediately notify the insurer of an accident, *Lewis v. Commercial Cas. Ins. Co.,* 142 Md. 472, 121 Atl. 259 (1923) ; when he failed to observe a policy condition not to voluntarily assume liability, *American Auto. Ins. Co. v. Fid. & Cas. Co.,* 159 Md. 631, 152 Atl. 523 (1930) ; and when he failed to forward to the insurer every notice, summons or other process served on the insured, *Employers' Liability Assur. Co. v. Perkins,* 169 Md. 269, 181 Atl. 436 (1935).

Between 1936 and 1961, although the Court had occasion to decide several cases concerning situations in which statements given by the insured to the insurer was falsified to the extent of appearing to justify a defense of the case, the element of prejudice as such was not a factor in any of them. In *Farm Bureau Mutual Auto. Ins. Co. v. Garlitz,* 180 Md. 615, 26 A. 2d 388 (1942), it was held, without stating whether or not the insurer had been prejudiced, that the insured was deprived of coverage because he had breached the requirement of cooperation. In *Indemnity Ins. Co. of N. A. v. Smith,* 197 Md. 160, 78 A. 2d 461 (1951), where the insured had disappeared without any notice to the insurer and the standards of prejudice (to the effect that discrepancies in statements must be material in nature, made in bad faith and prejudicial in effect) were stated for the first time, only the element of bad faith was considered

476

in holding that the insured had violated the conditions of the cooperation clause. And in *Union Assur. Soc. v. Garver,* 223 Md. 412, 164 A. 2d 879 (1960), where the authenticity of the estimate for the complete repair of a damaged trailer was not challenged by the insurer and where, despite the restatement (as in *Smith supra*) of the standards of prejudice, the absence or presence of prejudice was not essential to the holding that the genuineness of the estimate was no concern of the insurer.

Although the decisions since 1961, in which the element of prejudice was a factor, are not inconsistent with the principles of the previously decided cases, the results reached in two of them vary somewhat from the norm. In *Fid. & Cas. Co. v. Mc-Connaughy,* 228 Md. 1, 179 A. 2d 117 (1962), although it was suggested (by way of dictum) that the insurer ought to be required to show substantial prejudice when the lack of cooperation does not impair the investigation or defense of the case, it was held that the insurer was prejudiced by the conduct of the insured under the circumstances, but only to the excess of the policy limit over $3500 because, according to the insurer itself, it would have settled the case for that amount but for the deception of the insured. In *Natl. Indem. Co. v. Simmons,* 230 Md. 234, 186 A. 2d 595 (1962), involving a policy issued pursuant to the motor vehicle financial responsibility law, the Court, after stating that since the purpose of the law was to protect the public it should be interpreted to mean that liability is determinable as of the time of the accident, held that defenses based on the lack of notice or other cooperation by the insured were not available to the insurer. And in *Watson v. U. S. F. & G. Co.,* 231 Md. 266, 189 A. 2d 625 (1963), where the policy explicitly made written notice of an accident a condition precedent to an action against the insurer, it was held (as in *Lewis supra*) that the insurer did not have to show that it was prejudiced in order to deny liability for noncompliance with the condition of the policy.

Now by statute, § 482 of Article 48A of the Code (1965 Cum. Sup.), it is provided:

"Where any insurer seeks to disclaim coverage on any policy of motor vehicle liability insurance * * * on the ground that the insured * * * has breached the

policy by failing to cooperate with the insurer or by not giving requisite notice to the insurer, such disclaimer shall be effective only if the insurer establishes, by a preponderance of affirmative evidence that such lack of cooperation or notice has resulted in actual prejudice to the insurer."

The statute, which became effective on June 1, 1964, was held to affect substantive rights and to operate prospectively only in *State Farm Mutual Auto. Ins. Co. v. Hearn,* 242 Md. 575, 219 A. 2d 820 (1966).

While it may be that the insured did not cooperate as fully in the preparation of the case for trial as the insurer expected him to do, we cannot say that what the insured did or did not do before June 1, 1964, justified invoking the policy provisions concerning the assistance and cooperation of the insured. Nor can it be said that what occurred after the effective date of the statute was such as to establish that failure of the insured to cooperate had resulted in actual prejudice to the insurer. And since it was conceded at the argument that the insurer would not be prejudiced should the insured appear and testify at a trial, the case will be remanded for trial on the merits. Prior thereto every reasonable effort should be made to locate and notify the insured of the trial date. At the trial, the insurer should defend the case but without prejudice to its ultimate rights. Should the insured not appear and the evidence produced justifies finding a verdict for the plaintiffs against the defendant, the lower court would then be in a better position to decide whether or not the insurer should be relieved from payment of the judgment for failure of the insured to cooperate.

With this holding, it is not necessary to consider the other questions presented by this appeal.

> *Declaratory order vacated and case remanded for a trial on the merits; insurer-appellee to pay the costs.*