19773

ALLSTATE INSURANCE COMPANY, Plaintiff-Respondent, v. GOVERNMENT EMPLOYEES INSURANCE COMPANY et al., Joseph Sinclair, Defendant-Respondent, and Government Employees Insurance Company, Defendant-Appellant.

(202 S. E. (2d) 640)

*Messrs. Joseph R. Young* and *J. Rutledge Young, Jr.,* of *Young, Clement & Rivers,* Charleston, *for the Defendant-Appellant,*

112

*Messrs. Joseph H. McGee* and *McKenzie A. Perry, Jr.,* of *Buist, Moore, Smythe & McGee,* Charleston, *for Plaintiff-Respondent,* and *Steinberg, Levkoff, Spitz & Goldberg,* of Charleston, *for Defendant-Respondent,*

February 13, 1974.

LEWIS, Justice:

This is an action for declaratory judgment to determine coverage under the "replacement" provisions of an automobile liability insurance policy.

Defendant Government Employees Insurance Company (Geico) issued a policy of automobile liability insurance to defendant Joseph Sinclair (insured) on November 1, 1969, covering a 1961 Chevrolet automobile. The policy contained a provision which, without the necessity of notice to Geico, automatically extended coverage to a vehicle subsequently acquired by the insured during the policy period, if "it replaces an owned vehicle."

The automobile described in the policy became inoperable because of mechanical failure and the insured purchased a second 1961 Chevrolet on June 19, 1970. The original vehicle was not disposed of by the insured, but was never operated after the purchase of the second.

Subsequently, the second 1961 Chevrolet also became inoperable due to mechanical failure and the insured purchased a third 1961 Chevrolet on September 26, 1970. The second Chevrolet was not disposed of by the insured, but was not operated again after the purchase of the third.

The third 1961 Chevrolet was involved, on September 28, 1970, in an accident with the defendant Eunice W. Wear who brought an action against the insured to recover her damages. Question arose as to whether Geico afforded coverage for the third vehicle. This action was then brought by Wear's insurer, the plaintiff, to determine whether Sinclair, Geico's named insured, was an "uninsured motorist" as to the operation of the third car, in which event coverage would be afforded by the plaintiff, or whether he was under Geico's policy. The lower court held that the second and third Chevrolets were replacement vehicles and that

Geico's policy afforded coverage. Geico has appealed from this decision.

Disposition of the issues turns upon whether the Chevrolets subsequently purchased by the insured were replacement vehicles within the meaning of the "replacement" provisions of Geico's policy. Since Geico concedes that the third vehicle was a replacement for the second, the question becomes one of whether the second was a replacement for the first.

No question arises as to Geico's liability, if the automobiles were replacement vehicles, since both were purchased and the accident occurred within the policy period.

All issues were submitted to the trial judge for decision and, since the action is one at law, his factual findings are conclusive on appeal when supported by competent evidence.

Accordingly, the extent of our review is to determine whether there was any competent evidence to sustain the findings of the trial judge that the second automobile purchased by the insured was a replacement vehicle within the meaning of Geico's policy. If there is testimony to sustain such finding by the trial judge, it is conceded the judgment must be affirmed.

Under policy provisions similar to those presently involved, it has been soundly held that a "replacement vehicle is one the ownership of which has been acquired after the issuance of the policy and during the policy period, and it must replace the car described in the policy, which must be disposed of or incapable of further service at the time of replacement." Mere retention of title and possession of the described automobile will not prevent the attachment of replacement coverage to one subsequently acquired, where the described automobile is incapable of further service. *State Farm Mutual Automobile Insurance Co., v. Shaffer*, 250 N. C. 45, 108 S. E. (2d) 49; *Fleming v. Nationwide Mutual Insurance Co.* (4th Cir.), 383 F. (2d) 145; 7 Am. Jur. (2d), Automobile Insurance, Sec-

tion 101. Also, see annotation in 34 A. L. R. (2d) 936, Section 9, and later case service, for cases upon the subject of "replacement" policy provisions.

**L** In applying the foregoing principles, the trial judge found that each of the subsequently purchased automobiles, while retained by the insured, were replacements for a vehicle that was incapable of further service at the time of replacement and were, therefore, afforded coverage under Gieco's policy as replacement vehicles. There is evidence to sustain this finding.

The testimony sustains the inference that the automobile described in the policy was inoperable because of mechanical failure at the time of the purchase of the second and that the second was also inoperable because of mechanical failure when the third was acquired. The insured testified that, when he purchased the second, the original car had been "jacked up on some cinder blocks" at his house and the tires had been removed from the wheels. Significantly, all of the automobiles purchased were 1961 Chevrolets which had been in use for about eight years. It is reasonably inferable that the same model vehicles were purchased so that parts could be taken from the inoperable one to keep the replacement operating. While the exact nature of the mechanical failure of the original vehicle is not stated, the insured, a man of very limited education, sufficiently described his last effort to operate it to justify the conclusion that the old 1961 Chevrolet was of no further use. He testified, when asked: "Why didn't it (the original car) run?":

"Well something in the motor go crunk, crunk, crunk, like that, and it stop starting and kill the battery, and I kick it up through the stick and hit this, and it wouldn't crank at all. So I just left it go up there and take the tires off the rim and jack it up on the block and leave it stay."

The testimony sustains the finding of the trial judge that the original and second automobiles were never operated

again because mechanical failures rendered them incapable of further service.

Shortly after the purchase of the second Chevrolet, the insured contacted the agent of Geico and informed him of the purchase. Much of the factual discussion revolves around the nature of the report made by the insured to Geico's agent. There is some basis in the record for disagreement as to whether the insured then requested that the second car be *substituted* for the first or added to the policy as an *additional insured car*. Geico contends that the insured requested that the second car be added and that an additional premium was charged but never paid, resulting in a notice by Geico of a cancellation of coverage. The record, however, supports the conclusion of the trial judge that the insured simply went to the agent to report the purchase and that he never intended to have the second car added as an additional insured vehicle.

Our prior decision in *Miller v. Stuyvesant Insurance Co. of N. Y.,* 242 S. C. 322, 130 S. E. (2d) 913, cited by Geico, involves different facts and is not controlling. In that case, Miller and his wife owned a 1950 Ford described in the policy, which was transferred to the wife. She at all times resided in the same household with Miller and retained the car. Subsequently, Miller purchased a 1955 Chevrolet which was involved in an accident. The contention of the insured, that the 1955 Chevrolet was covered as a replacement vehicle since the 1950 Ford had been transferred to the wife, was rejected because possession and ownership of the automobile described in the policy remained in "Miller or his wife," who were residents of the same household.

Judgment affirmed.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.