HARLEYSVILLE INSURANCE COMPANY *v.*
STEPHEN D. ROSENBAUM ET AL.

[No. 247, September Term, 1975.]

*Decided January 29, 1976.*

76

The cause was argued before MOYLAN, DAVIDSON and MELVIN, JJ.

*Richard P. Rosche* for appellant.

*William R. Hymes*, with whom was *John C. Corbley* on the brief, for appellee Maryland Automobile Insurance Fund.

DAVIDSON, J., delivered the opinion of the Court.

On 3 January 1974, in the Circuit Court for Howard County, the appellee, Stephen D. Rosenbaum, filed a suit for a declaratory judgment against the appellants, Victor John Williams,[1] Harleysville Insurance Company, and the appellee, the Maryland Automobile Insurance Fund (the Fund). Rosenbaum sought a declaratory judgment, insofar as here relevant, that either Williams was an insured under a policy of insurance issued to him by Harleysville and was entitled to coverage for liability which might result from an automobile accident on 24 March 1973,[2] or that Williams was an uninsured motorist, so that the Fund would be responsible for any such liability. The case was tried on 16 July 1974 before Judge T. Hunt Mayfield, sitting without a jury. On 2 December 1974, Judge Mayfield entered an order declaring that on 24 March 1973, Williams was insured by Harleysville, and was entitled to coverage with respect to the accident which occurred on that date. Harleysville's motion for a new trial was denied on 14 January 1975, and on 13 February this appeal was filed.

The record shows that on 28 June 1972, Harleysville issued

---

1. On 9 April 1974, a suggestion of Williams' death was filed, and the personal representative of his estate was substituted as a party defendant.

2. On 3 July 1973, Rosenbaum had filed a suit against Williams for damages alleging both property and personal injuries suffered in that accident.

a policy of automobile liability insurance to Williams. The insurance policy provided in pertinent part:

"Definitions . . .

. . .

'owned automobile' means

(a) a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded,

. . .

(c) *a private passenger*, farm or utility *automobile ownership of which is acquired by the named insured during the policy period, provided*

    (1) *it replaces an owned automobile as defined in (a) above*, or

    (2) the company insures all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile . . ." (emphasis added).

The policy covered a six month period and described Williams' 1966 Plymouth as the only "owned automobile." On 1 December 1972, Williams purchased a 1970 Chevrolet. There was evidence to show that at the time of purchase, one of the car dealer's employees called Harleysville's agent. On 28 December, the policy of insurance was renewed for a second six months without a change in the description of the insured automobile. On 24 March 1973, Williams was involved in an automobile accident while driving the Chevrolet. The lower court found that at the time of that accident the Chevrolet was a replacement for the Plymouth, and was the insured vehicle.

## I

The appellant contends that the trial court's finding that the Chevrolet was a replacement vehicle within the meaning of subsection (c) (1) of the definition of "owned automobile" as set forth above, is erroneous because Williams acquired and used the Chevrolet while he owned and could use the Plymouth. We do not agree.

The Court of Appeals has held that a finding on the question of whether a newly acquired automobile is a "replacement" for an owned automobile described in an insurance policy is one of fact, which will not be reversed unless clearly erroneous.[3] That Court has also held that evidence which shows directly or supports a rational inference that the owned automobile described in the policy was inoperable at the time of the acquisition of another car, is sufficient to support the finding that the newly acquired car was a "replacement."[4]

There was evidence here to show that the Plymouth was inoperable and was towed to the dealer's lot when the Chevrolet was purchased in December, 1972, and that it stayed on the lot without license plates "maybe for six months," and was "no good, of no value . . . a five dollar car," and was finally given away to "Jerry's Auto Parts." In addition, there was evidence to show that Williams had "only operated one car at a time." There was also evidence to show that Williams applied for new license tags for the Plymouth on 5 April 1973, certifying that Harleysville insured that car, and that on 20 April 1973, Williams was involved in an accident while driving the Plymouth. The evidence was sufficient to support findings that the Plymouth was inoperable and was not owned by Williams on 24 March 1973, and was subsequently reacquired by Williams. The trial court's finding that on 24 March 1973,

---

3. Maryland Indem. & Fire Ins. Exch. v. Steers, 221 Md. 380, 387, 157 A. 2d 803, 807 (1960); Maryland Rule 1086.

4. Maryland Indemnity, supra, 221 Md. at 388, 157 A. 2d at 808; see Allstate Ins. Co. v. Government Employees Ins. Co., 202 S.E.2d 640, 642 (S. C. 1974).

the Chevrolet was a replacement automobile covered by the policy was not clearly erroneous.

## II

The appellant next contends that the trial court's finding that the Chevrolet was a replacement automobile is erroneous because the Chevrolet was not acquired by Williams during the policy period as required by subsection (c) of the definition of "owned automobile" set forth above. Again we do not agree.

In *Maryland Indemnity and Fire Insurance Exchange v. Steers*,[5] the insured, in December, 1955, was issued an automobile liability insurance policy, covering bodily injury and property damage liability, for a one year period. The policy designated an Oldsmobile as the insured automobile. Before April, 1956, the Oldsmobile became inoperable. Nevertheless, on 1 April, the insured renewed its license plates because he expected to "get it running again." In May, the insured purchased a Dodge, which he thereafter used, leaving the Oldsmobile "standing in the street," still licensed. In December, 1956, the insured was issued a renewal insurance policy, which repeated the designation of the Oldsmobile as the insured automobile. In March, 1957, the insured renewed the license plates on the Dodge but failed to renew those on the Oldsmobile, which then became legally, as well as physically, inoperable. Later that same month, the insured bought a Ford, and transferred the license plates from the Dodge to the Ford. He did not then notify the insurer of the transfer. The insured bought a Pontiac in October, 1957, which he never registered or operated. In November, 1957, the insured was involved in an automobile accident while operating the Ford. He reported the accident to the insurer, and one week later caused the insurer to designate the Ford as the insured automobile in place of the Oldsmobile.

In the Court of Appeals, the insurer asserted nonliability

---

5. 221 Md. 380, 157 A. 2d 803 (1960).

on the ground, in relevant part, that the designation in the renewal policy, of the Oldsmobile as the insured car was a misrepresentation by the insured as to the identity of the insured car. It maintained that consequently the policy was void from the date of renewal. The Court found that even if the designation of the Oldsmobile on the renewal policy were a "misrepresentation," it was not "material" to the risk of property damage or bodily injury liability, which was the extent of the policy coverage. The Court said:

> "Most important of all, we think, is the fact that the insurance policy itself contained a provision which made it applicable to any newly acquired vehicle which replaced an insured automobile, and provided that the liability insurance thereby afforded and here involved should become effective as to the newly acquired automobile without notice of the replacement." [6]

Thus the Court held that under an insurance policy which does not require notice of the replacement of the designated automobile, coverage is not terminated because the policy is renewed after the designated automobile has been replaced. In reaching this result, the Court recognized that the kind of car is immaterial to the insurer's risk of liability to a third person for property damage and bodily injury, when it said:

> "[I]nsofar as liability insurance was concerned, Indemnity was almost, if not completely, indifferent to the substitution under the policy of an automobile acquired as a replacement for the vehicle already described." [7]

Harleysville contends that *Maryland Indemnity* is inapplicable. It asserts that under its policy notice of replacement is required. Here, unlike *Maryland Indemnity*, the policy does not expressly provide that "notice is not required . . . if the newly acquired automobile replaces an owned automobile covered by this policy." Subsection (c) (1)

---

6. 221 Md. at 385, 157 A. 2d at 806.
7. 221 Md. at 386, 157 A. 2d at 807.

set forth above, applicable to replacement automobiles, contains no express provision relating to notice. Subsection (c) (2) set forth above, applicable to additional automobiles only when the company insures all automobiles owned by the insured, requires notice within the policy period or 30 days of acquisition. Because (c) (1) is separated from (c) (2) by the disjunctive word "or," the notice requirement does not apply to replacement of the designated automobile. The policy is clear and unambiguous. Here, as in *Maryland Indemnity*, the policy contains no requirement of notice that the designated automobile has been replaced.

Harleysville next contends that *Maryland Indemnity* is inapplicable because under its policy the replacement automobile must have been "acquired . . . during the policy period," a requirement not present in the policy considered in that case. It asserts that since the Chevrolet was purchased during the policy period from 28 June to 28 December 1972, it was not insured as a replacement automobile during the renewal period from 28 December 1972 to 28 June 1973, because it was not acquired during that period. We do not agree.

Courts of other states have recognized that the language "acquired during the policy period" does not preclude an automobile acquired in a given policy period from being insured in a renewal period. In cases involving policy provisions similar to (c) (2) set forth above, courts have held that if the required notice has been given, an additional automobile acquired in a given period is insured in a renewal period, even though the additional automobile is not designated in the renewal policy.[8] The underlying rationale of these cases is that once the insured has done all that

---

8. Carey v. State Farm Mut. Ins. Co., 247 F. Supp. 381 (E.D. Va. 1965), *aff'd* 367 F. 2d 938 (4th Cir. 1966); Hughes v. Glens Falls Ins. Co., 485 P. 2d 597, 599 (Ariz. App. 1971).

If timely notice is not given, an additional automobile acquired in a given period will not be insured in a renewal period. Southern Guar. Ins. Co. v. Wales, 218 So. 2d 822, 827 (Ala. 1969); American Motorists Ins. Co. v. Carver, 80 Cal. Rptr. 332, 334-35 (App. 1969); Pennsylvania Thresh. & Farmer's Mut. Cas. Ins. Co. v. Traister, 173 So. 2d 153, 155-56 (Fla. App. 1965); Barrett v. State Farm Mut. Auto. Ins. Co., 236 So. 2d 900, 904 (La. App. 1970).

is required of him, the newly acquired automobile is insured just as if it were described in the policy. Thus when that policy is renewed, the newly acquired automobile is the insured automobile,[9] even though not so designated in the renewal policy.

Applying this rationale to the instant case produces a clear result. Here the insured's policy did not require notice of the acquisition of a replacement automobile. Nor did it require anything else in order for the insured to obtain coverage for a replacement automobile. Since there was nothing required of the insured, the Chevrolet became the insured automobile on the day of its acquisition, when it became the replacement for the Plymouth, and remained the insured automobile when the policy was renewed.

Further support for the conclusion that the language "acquired during the policy period" appearing in section (c) set forth above, does not preclude coverage of a replacement automobile as defined in subsection (c) (1), during a renewal period, is found in the language of subsection (c) (2), which authorizes notification of the acquisition of additional automobiles during the policy period or within 30 days of acquisition. Since acquisition may occur upon the last day of the policy period, this provision establishes that notice may be given after the policy has been renewed. Under such circumstances, the additional automobile, acquired in the previous policy period, would be insured. Similarly, under subsection (c) (1), a replacement automobile acquired in a previous policy period would be insured in a renewal period.

Under the present circumstances, we are persuaded that the Chevrolet acquired in the original policy period was a replacement automobile which was insured during the renewal period. The trial court's judgment in this respect will be affirmed.

III

There was evidence to show that Williams did not give

---

9. Mattox v. Pennsylvania Thresh. & Farmer's Mut. Cas. Ins. Co., 160 So. 2d 458, 462-63 (Ala. 1964).

written notice to Harleysville of the details of the 24 March accident involving the Chevrolet. By 11 April 1973, Harleysville had received notice of the occurrence from someone other than the insured. Thereafter, Harleysville wrote two letters to Williams urging him to comply with the contract notice and cooperation clauses, the second of which, dated 25 May 1973, stated that the failure to comply would result in a disclaimer of coverage by Harleysville. Two attempts to reach Williams by telephone were made, and on one occasion an agent went to his home. All these efforts were unsuccessful. On 14 August 1973, Harleysville wrote another letter to Williams, this one concerning the 20 April 1973 accident involving the Plymouth. Within a week, in response, Williams made a report of that accident either in person or by telephone. The 24 March accident involving the Chevrolet was not discussed. Harleysville ultimately disclaimed liability for the 24 March accident. Williams died on 1 February 1974, before this suit for a declaratory judgment came on for trial.

Harleysville contends that it was entitled to disclaim liability under its policy because Williams breached the "notice" and "assistance and cooperation" provisions of the policy.[10] It asserts that it suffered actual prejudice as a result of that breach, because the insured died before trial, without having given Harleysville any account of the accident. Again we do not agree.

The Maryland Insurance Code provides:

## "DISCLAIMER OF COVERAGE BECAUSE OF LACK OF NOTICE OR COOPERATION FROM INSURED:

Where any insurer seeks to disclaim coverage on any policy of liability insurance issued by it, on the ground that the insured or anyone claiming

---

10. The insured was required to give written notice of any accident, containing his name, the time, date, place and circumstances of the accident, and the names of injured persons and witnesses. He was also required to cooperate with the company in the conduct of suits and settlement efforts, to attend hearings and trials, and to assist in securing evidence.

the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving requisite notice to the insurer, *such disclaimer shall be effective only if the insurer establishes, by a preponderance of the affirmative evidence that such lack of cooperation or notice has resulted in actual prejudice to the insurer.*" (Emphasis added.) [11]

In order to show "actual prejudice," it is necessary to show an act on the part of the insured "which had or could have had any effect upon the jury which induced them or in any way caused them to render the verdict against himself." [12] Stated another way, the insurer must establish a substantial likelihood that if the cooperation or notice clause had not been breached, the insured would not have been held liable.[13] In determining whether any act of the insured may have affected the jury, and created a substantial likelihood that the verdict would be against him, something more than the facts adduced to show that the insured breached the cooperation or notice clause must be presented. It is necessary to have available the facts and circumstances surrounding the accident which is the basis for the claim against the insured,[14] because a finding of actual prejudice inherently depends to some extent upon the closeness of the case.

These principles were recognized in *Warren v. Hardware Dealers Mutual Fire Insurance Co.*[15] There the Court of

---

11. Md. Ann. Code (1957, 1972 Repl. Vol.) Art. 48A, § 482.

12. United States Fid. & Guar. Co. v. Williams, 148 Md. 289, 307, 129 A. 660, 667 (1925). Before the enactment of Art. 48A, § 482, a showing of prejudice was required to support a disclaimer of liability founded upon a breach of the cooperation clause in an insurance policy, but not for a disclaimer founded upon a breach of a notice clause. Travelers Ins. Co. v. Godsey, 260 Md. 669, 673, 273 A. 2d 431, 434 (1971). Under these circumstances, the standard previously applicable to establish prejudice in lack of cooperation cases can appropriately be applied where a disclaimer of liability is founded upon either lack of cooperation or lack of notice.

13. Northwestern Title Sec. Co. v. Flack, 85 Cal. Rptr. 693, 697-98 (App. 1970).

14. MFA Mut. Ins. Co. v. Sailors, 141 N.W.2d 846, 849 (Neb. 1966).

15. 244 Md. 471, 224 A. 2d 271 (1966).

Appeals found that the trial court acted prematurely, in deciding in a declaratory judgment suit prior to a trial of the issue of negligence, that the insurer was entitled to disclaim liability because it was prejudiced by the insured's failure to cooperate. The insured had promptly notified the insurer of the accident and its surrounding details. Thereafter, investigators seeking further information repeatedly but unsuccessfully attempted to reach him. Some months later, the insured gave another written statement to an investigator. As the time for trial approached, a third investigator spent more than a week attempting to locate the insured, and failed. In addition, the pleadings in the damage suit were not sent to the insurer by the insured, but rather by the attorney for the plaintiff. The insured failed to keep appointments with the insurer's attorney, and failed to reply to his letters, even after being informed that the insurer would no longer represent him. There the Court recognized that evidence of the failure of the insured to cooperate may establish a breach of the policy's cooperation clause, but cannot in and of itself establish that that breach resulted in actual prejudice to the insurer. It then said:

"[S]ince it was conceded at the argument that the insurer would not be prejudiced should the insured appear and testify at a trial, the case will be remanded for trial on the merits. Prior thereto every reasonable effort should be made to locate and notify the insured of the trial date. At the trial, the insurer should defend the case but without prejudice to its ultimate rights. *Should the insured not appear and the evidence produced justifies finding a verdict for the plaintiffs against the defendant, the lower court would then be in a better position to decide whether or not the insurer should be relieved from payment of the judgment for failure of the insured to cooperate.*" (Emphasis added.) [16]

---

16. 244 Md. at 477, 224 A. 2d at 274.

Here, the evidence presented concerning the events preceding the insurer's disclaimer was relevant to the question of whether a breach of the policy's notice and cooperation clauses had occurred. Assuming without deciding that there was such a breach, that evidence was insufficient in and of itself to establish actual prejudice. In this case, unlike *Warren*, it is certain that Williams, now deceased, will not appear at the trial. We nontheless believe that here, as in *Warren*, the trial court, after a trial of the negligence action in which evidence of the facts and circumstances surrounding the accident will be presented, will be in a better position to decide whether, given the closeness of the case, the actions of Williams affected the jury's verdict and therefore whether the insurer suffered actual prejudice. The trial court's finding that Harleysville was not actually prejudiced is premature and will be vacated.[17] At a trial of the pending negligence action, Harleysville should defend the case, but without prejudice to any of its ultimate rights. The question of Harleysville's right to disclaim because of actual prejudice may be resolved when and if a judgment against Williams is obtained in that proceeding.

> *Declaratory order affirmed in part and vacated in part in accordance with this opinion.*
> *Costs to be paid by appellant.*

---

17. In Brohawn v. Transamerica Ins. Co., the Court of Appeals in dicta said:

"[W]here an insurance company claims lack of coverage because of the insured's failure to comply with contract provisions such as the cooperation or notification clause, or failure to pay premiums, a declaratory judgment would ordinarily be appropriate and should be granted." 276 Md. 396, 347 A. 2d 842, 848 (1975).

We here follow the holding in Warren, *supra.*