# GOVERNMENT EMPLOYEES INSURANCE CO. *v.* JOHN F. REILLY

[No. 919, September Term, 1981.]

*Decided March 5, 1982.*

The cause was argued before LOWE and WILNER, JJ., and CHARLES E. ORTH, JR., Associate Judge of the Court of Appeals (retired), specially assigned.

*Albert D. Brault,* with whom were *Janet S. Zigler* and *Brault, Graham, Scott & Brault* on the brief, for appellant.

*William J. Rowan, III,* with whom were *Rowan, Abell, Quirk & Quinn* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

The parties in this case agree that the facts found by the Circuit Court for Montgomery County were accurately depicted in its memorandum opinion and order declaring that appellant insurance company's policy of insurance covered appellee's automobile accident under the circumstances recited. They also agree that the court addressed the appropriate provisions of the policy; however, they disagree upon the result it reached, which included appellant's obligation to pay all of appellee's expenditures in defending the declaratory action brought by appellee.

We find so little difficulty with the pertinent policy provisions, in light of the agreed factual findings, it is hard to understand why there was a controversy in the first instance. Our consternation is so enhanced by the result reached by the trial judge that we hesitate lest we have overlooked some nuance of reasoning in the opinion. We have, therefore, elected to proceed by reciting *in totidem verbis* the opinion of the trial judge, adopting his recitation of facts as our own and addressing our critique to his reasoning. We will thereby respond to the appellee's argument as well.

## "MEMORANDUM OPINION & DECLARATORY JUDGMENT

The question presented by this Petition for Declaratory Judgment is whether a certain 1967 Volvo was an 'owned automobile' within the meaning of a policy of automobile insurance.

The Plaintiff, John F. Reilly, purchased a Fiat automobile in 1976. Defendant, Government Employes [sic] Insurance Company (GEICO), issued a policy to Reilly from February 8, 1978 to February 8, 1979 which insured his bodily injury and property damage liability and named as the 'owned automobile' a 1971 Fiat. In late 1978 or early 1979, Reilly acquired a Ford Pinto as a temporary car until the Volvo, which he was contemporaneously purchasing became roadworthy. On January 31, 1979, the Fiat was replaced on the GEICO policy with the Ford Pinto. It was Reilly's intent to use the Ford until such time as the Volvo was restored and roadworthy. He alleges that he spoke with a GEICO representative about adding the Volvo to the policy, but he didn't intend that the car be on the road until the Spring of 1979. The Volvo was not added to the policy. On February 8, 1979 the policy was renewed for one year with the Ford as the 'owned automobile.'

On April 15, 1979, the Ford became inoperable as a result of hitting a pothole. On April 16, 1979, it is Reilly's testimony with the Ford named as the 'owned automobile' that the Volvo was not roadworthy. It had no valid inspection sticker, the turn signal lights did not operate, and it had only one seat. Nevertheless, as a result of the Ford becoming inoperable, Reilly, on April 16, 1979, used the Volvo and was involved in an accident with one Beverly S. Haley. Because he thought the damage was minor, and because no one claimed injury, he did not notify GEICO on April 16.

On April 17 he went to London for two weeks and, upon his return, notified GEICO, who already had notice of the accident from Haley. Additionally, upon his return from London,

he had the Ford repaired and used a rented car for the month it took to complete the repairs. Thereafter, he drove the Ford until the Volvo was added to the policy on June 27, 1979. In November of 1979, the Ford was dropped from the policy and disposed of by Reilly.

On May 25, 1979, GEICO denied coverage for the April 16 accident involving the Volvo. It is GEICO's position that the Volvo did not fall within the definition of 'owned automobile' under the policy. The policy says, in pertinent part [that the company will pay all sums for which the insured shall become liable arising out of the ownership, maintenance or use of the 'owned automobile' or any 'non-owned automobile'. An 'owned automobile' means]:

(a) A private passenger . . . automobile described in this policy for which a specific premium charge indicates that coverage is afforded . . . [1]

(b) [c] [1] A private passenger . . . automobile ownership of which is acquired by the named insured during the policy period, provided
(1) It replaces an owned automobile as defined in (a) above, or
(2) The company insures all private passenger . . . automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company within thirty days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile, or

(c) (d)[1] A temporary substitute automobile.

'Temporary substitute automobile' under the policy, was defined to mean:

---

[1. The proper lettering as set forth in the policy was as we have interspersed, as recognized by the judge's subsequent reference].

> Any automobile ... not owned by the named insured, while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

For the reasons set forth below, the Court finds that the 1967 Volvo was, at the time of the accident, an 'owned automobile' within the meaning of the insurance policy.

The determination of whether the Volvo was covered is a question of fact, *Maryland Indemnity and Fire Insurance Exchange* v. *Steers,* 221 Md. 380 (1960). The cases have indicated that when a car is newly purchased to replace one which is at the time inoperable, that evidence is very strong support for the conclusion that the newly purchased car is a 'replacement' vehicle, *see Maryland Indemnity, id.; Harleysville Insurance Company* v. *Rosenbaum,* 30 Md. App. 74 (1976). It does not follow, however, that no other evidence will support the same conclusion. A close reading of the language in the policy itself demonstrates that a major factor in the determination is the intent of the owner. An owner acquiring a new car may decide that it will be used by another member of the family, that it will be used only for special purposes (such as long distance trips or camping), that it will immediately replace a presently owned car or, as in the instant case, that it will *eventually* replace a presently owned car. Other language in the policy also illustrates the role of the owner's intent. A 'temporary substitute vehicle' may be covered if it is used while the primary vehicle is being serviced or repaired or if the primary vehicle has been lost or destroyed.

The facts in the case before the Court would support a conclusion that the Volvo was either a 'replacement' vehicle within the meaning of section (c) (1), or that it was a 'temporary substitute' vehicle within the meaning of section (d). As a practical matter, the Volvo was covered in either case. Further, the risk to the insurer in this case was not altered so long as the owner claimed coverage of only one automobile

during that policy period, *see e. g. Maryland Indemnity, supra,* at 384-387.

Accordingly, it is this 1st day of May, 1981, by the Circuit Court for Montgomery County, Maryland, Sitting as a Court of Law,

DECLARED that by reason of the terms and conditions of GEICO Policy No. 255-82-45, and of the testimony taken in open court, that coverage is afforded to the Plaintiff, John F. Reilly, under the policy issued by Government Employes [sic] Insurance Company in the suit of Beverly S. Haley vs. John F. Reilly in the Circuit Court for Prince George's County, Law No. 77144, and further that the Defendant is obligated to repay the Plaintiff all reasonable sums of money in defending said suit by Reilly to date and in pursuing his legal rights against GEICO."

— replacement vehicle —

Neither *Maryland Indemnity, supra,* nor *Harleysville, supra,* are apposite here since both dealt with "newly acquired" automobiles purchased as "replacements" for the "owned automobile" designated in the policy. In *Maryland Indemnity,* the designated vehicle had become both legally and physically inoperable and consequently the vehicle involved in the accident *was purchased to replace it.* The Court's holding on this issue, which we followed in *Harleysville,* was that a factual finding at the trial level that "a newly acquired automobile" is a replacement for a described vehicle will not be reversed unless clearly erroneous. *Maryland Indemnity, supra* at 387; *Harleysville, supra* at 78.

The Volvo in this case was neither "newly acquired" nor did it "replace" the designated Ford Pinto. The contextual use of the term "replaces," as used in the policy, obviously connotes a supplanting or superseding of the designated car as opposed to a temporary substitution for it, which is addressed by the next clause. Factually here, the Ford was not "replaced" until November of 1979, having been repaired

and used in the interim, and the Volvo was concededly not "newly acquired". The trial judge was clearly in error in holding that the Volvo was a replacement automobile within the meaning of the policy. The evidence was uncontradictedly to the contrary.

We need not have addressed that finding, however, because the judge and the parties have overlooked a condition prerequisite to coverage.

Condition number 1 of the policy is that it

> "applies only to accidents, occurrences and loss *during the policy period . . . ."* (Emphasis added).

According to the facts recited by the judge, the Volvo and the Ford were acquired "contemporaneously" in late 1978 or early 1979. Since the Ford replaced the Fiat on January 31, 1979, it is clear that this contemporaneous acquisition was during the policy period drawing to an end on "02-08-79". The Volvo accident occurred on April 16, 1979, after the policy had been "renewed for one year", *i. e.,* for the new

> "Policy Period (Month Day, Year) From 02-08-79 to 02-08-80".

As is apparent in subsection (c), for a replacement vehicle to comply as an alternative "owned automobile", it must have been

> "acquired by the named insured during the policy period."

The Volvo was acquired during the policy period from "02-08-78 to 02-08-79". The accident occurred during the policy period from "02-08-79 to 02-08-80." The unambiguous meaning of the "policy period" during which the vehicle is required to have been acquired as a condition of coverage is the policy period during which coverage is claimed. If that were not so, applying the reasoning of the court, an entire fleet of simultaneously acquired vehicles would be subject to coverage by describing one only, so long as the insured "intended *eventually"* to replace it, *e.g.,* in the eventuality

the owner incurred an accident while driving one of the undescribed vehicles.

Some concern was expressed at argument that *Harleysville, supra* at 81, seems to hold that the clear and unambiguous proviso that a replacement vehicle must have been "acquired . . . during the policy period" was unenforceable or of no effect because we cursorily disagreed with a similar contention:

> "Harleysville next contends that Maryland Indemnity is inapplicable because under its policy the replacement automobile must have been 'acquired . . . during the policy period,' a requirement not present in the policy considered in that case. It asserts that since the Chevrolet was purchased during the policy period from 28 June to 28 December 1972, it was not insured as a replacement automobile during the renewal period from 28 December 1972 to 28 June 1973, because it was not acquired during that period. We do not agree."

That holding was, however — and is — restricted to the facts of that case wherein the *replacement* vehicle was purchased less than a month before a policy period ended and the insurance company was notified, *id.* at 77; but the renewal policy still listed the abandoned derelict, which had been replaced by the newly acquired vehicle. Nothing in that case should be interpreted as obviating the clear contractual condition prerequisite to coverage except where, as in *Harleysville,* the company fails to substitute the replacement automobile for the designated vehicle after it has been given notice of the purchase.

### — temporary substitute vehicle —

The judge provided an alternate reason for reaching the same result. He contended that the Volvo could have been factually determined to be a "temporary substitute" vehicle; however, again he overlooks a condition precedent. A "tem-

porary substitute automobile," as pointed out in the opinion is defined by the policy as

> "[a]ny automobile ... *not* owned by the insured. . . ." (Emphasis added).

Recognizing the error in the judge's alternative, the appellee contends that there is an ambiguity in the policy which would permit the Court to construe the policy in his favor.

> "The ambiguity present in this contract is whether or not an automobile, acquired during the policy period, becomes an 'owned automobile' for the purposes of policy coverage, when it is a temporary replacement or must it be a permanent replacement of the automobile named in the policy . . . . This Court should construe the policy against its writer, the insurance company, and find a *temporary replacement* for an owned automobile by a second owned automobile is sufficient for coverage."

Even if the trial court had addressed the question of ambiguity — which it did not, see Md. Rule 1085 — and admitted evidence of some meaning other than the apparent one, we would be hard pressed to distort that which is clear, unequivocal and unambiguous. The trial court did not find it ambiguous, nor do we.

There is no reason to address the issue of defense costs and attorney's fees in light of our result. We agree with the appellee that the issue joined between the parties was not a "close question," but for reasons contrary to those expressed by appellee. An insurer has not unjustifiably refused to defend its insured when it is successful in its action denying coverage.

> *Judgment reversed.*
> *Costs to be paid by appellee.*