CATAWBA VALLEY MACHINERY CO., INC. v. AETNA INSURANCE COMPANY

No. 7125SC516

(Filed 15 December 1971)

1. Insurance § 78— motor cargo insurance — coverage of goods "held in trust" — textile machinery

A provision of a motor cargo insurance policy which covered the land shipment of textile machinery "held in trust" by the insured *is held* to embrace the insured's hauling by truck of twenty-three hosiery machines owned by a customer who agreed to pay the insured $8.50 an hour for carrying the machinery from Pennsylvania to North Carolina.

2. **Insurance § 78— motor cargo insurance — construction of the words "held in trust"**

The words "held in trust," when used in a policy of insurance, are not to be taken in their technical sense so as to limit coverage to cases where title to property is vested in a trustee, but are to be considered as inclusive of all property which has been entrusted to the insured.

3. **Insurance § 6— construction of insurance contract**

The terms of an insurance contract must be given their plain, ordinary, and accepted meaning unless they have acquired a technical meaning in the field of insurance, or unless it is apparent that another meaning was intended.

4. **Insurance § 78— motor cargo insurance — transportation of textile machinery — damage to machinery — effect of exclusionary clause**

With respect to coverage under a motor cargo insurance policy for damage to a customer's hosiery machinery that was being transported from Pennsylvania to North Carolina by the insured, a hosiery machinery dealer who was not in the contract hauling business, the clause which specifically excluded from coverage all machinery transported by the insured under a hauling contract or as a bailee for hire *is held* controlling, rather than the clause which insured the shipment of machinery "held in trust" by the insured.

5. **Insurance § 6— construction of ambiguous words**

Any ambiguity in words selected by an insurance company must be resolved in favor of the insured and against the company.

6. **Insurance § 6— construction of comprehensive coverage provision**

Comprehensive coverage provisions of an insurance contract must be read together with other provisions which, through exclusions, more definitely define the scope of the coverage provided.

7. **Insurance § 78— motor cargo insurance — loss of hosiery machinery in transport — exclusionary provisions**

Evidence offered by a hosiery machinery dealer established that it was transporting a customer's hosiery machines under a contract of hauling at the time the machines were damaged in a wreck, and consequently the dealer could not recover for loss of the machines under an insurance policy which specifically excluded goods carried under a contract of hauling.

APPEAL by plaintiff from *Friday, Judge,* January 1971 Session of Superior Court held in CATAWBA County.

This is a civil action to recover $19,400 allegedly owed by defendant under a policy of insurance issued to plaintiff 18 December 1965.

Plaintiff corporation is a hosiery machinery dealer. Its principal business consists of buying and reselling hosiery mills

and machinery and selling hosiery machinery on commission and consignment.

The policy sued upon is entitled "Motor Truck Cargo Policy." It provides in paragraph 2:

"2. COVERING. This Policy covers on land shipments of lawful goods consisting principally of TEXTILE MACHINERY the property of the Insured, or *held by them in trust*, or on commission, or on consignment, or on which they have made advances, or sold but not delivered, while loaded for shipment on or in transit in or on the following described vehicles, operated by the Insured but only to cover as respects each vehicle within the specified radius from the Insured's base of operations all within 48 contiguous States of the United States, the District of Columbia and the Provinces of Canada."

Paragraph 7 of the policy provides in bold print "THIS POLICY DOES NOT INSURE. . . . " Then follows thirteen subparagraphs listing various exceptions to coverage, including subparagraph (d) which provides: "Goods carried by the Insured under a contract or agreement of hauling or as bailee for hire. . . . "

On 30 August 1968, during the policy period, plaintiff's truck wrecked causing damage to its cargo, which consisted of twenty-three hosiery machines owned by a customer. The machines were being transported from a plant in Reading, Pennsylvania to a plant of the customer's subsidiary corporation in Hickory. The machines were being hauled pursuant to an agreement whereby plaintiff was to be paid an hourly rate of $8.50 an hour for driving time and for time spent in loading and unloading the machines.

Defendant refused to pay for the damages to the machines, contending that the machines were not covered under the terms of the policy of insurance. Plaintiff made settlement directly with its customer and instituted this suit to recover the amount paid the customer, plus legal expenses incurred in making settlement.

At the conclusion of plaintiff's evidence defendant moved for a directed verdict asserting as grounds therefor that plaintiff's evidence had conclusively established that the machines in

question were not covered under the policy of insurance sued upon. The court allowed defendant's motion and plaintiff appealed.

*Kenneth D. Thomas for plaintiff appellant.*

*Patrick, Harper & Dixon by Bailey Patrick and F. Gwyn Harper, Jr., for defendant appellee.*

GRAHAM, Judge.

[1]  The first question presented by this appeal is whether, at the time the machines were damaged, they were being held in trust by the insured within the meaning of paragraph 2 of the policy which includes among the property covered, "property of the Insured, or *held by them in trust. . . .* "

[2]  We think this question must necessarily be answered in the affirmative. It is universally held that the words "held in trust," when used in a policy of insurance, are not to be taken in their technical sense so as to limit coverage to cases where title to property is vested in a trustee, but are to be considered as inclusive of all property which has been entrusted to the insured. See Annot., 67 A.L.R. 2d 1241, 1245, and cases there cited. "The words 'in trust' may, with entire propriety, be applied to any case of bailment, where goods belonging to one person are intrusted to the custody or care of another, and for which the bailee is responsible to the owner." *Exton & Co. v. Home Fire & Marine Ins. Co.*, 249 N.Y. 258, 164 N.E. 43.

[3]  This holding is consistent with general principles prevailing in North Carolina to the effect that "[t]he terms of an insurance contract must be given their plain, ordinary, and accepted meaning unless they have acquired a technical meaning in the field of insurance, or unless it is apparent that another meaning was intended." 4 Strong, N.C. Index 2d, Insurance, § 6 at 462.

Defendant does not seriously question this interpretation, stating in its brief:

> "For the purpose of argument we assumed that the words 'in trust' as used in the policy in question are not to be interpreted as meaning only a technical trust in which title to the property is held by the trustee, but are to be

interpreted in the commercial or mercantile sense as embracing property of others, possession of which has been entrusted to the insured for which the insured may be called to account. The words 'in trust,' when thus interpreted are equivalent to stating that a general bailment exists between the owner and the insurance carrier."

[4, 5] The next question becomes: Were the machines which were "held in trust" by the insured excluded from coverage by the language of paragraph 7(d), which specifically provides that the policy does not insure goods carried by the insured under a contract or agreement of hauling or as a bailee for hire? These words were selected by the insurance company and therefore any ambiguity or uncertainty as to their meaning must be resolved in favor of plaintiff and against the company. *Trust Co. v. Insurance Co.*, 276 N.C. 348, 172 S.E. 2d 518. However, an insurance contract, like any other contract, is to be construed according to the sense and meaning of its terms, and if the terms used are clear and unambiguous, they are to be taken and understood in their plain, ordinary and popular sense. *Powers v. Insurance Co.*, 186 N.C. 336, 119 S.E. 481.

We find no ambiguity or uncertainty in the language of paragraph 7(d). The language used is simple and all the terms have well understood meanings. The clause simply excludes from coverage goods which, although held by the insured "in trust" for another, are being transported by the insured under a contract or an agreement of hauling or as bailee for hire.

"The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *Electric Co. v. Insurance Co.*, 229 N.C. 518, 520, 50 S.E. 2d 295, 297. Through the exclusion contained in paragraph 7(d), the parties obviously intended to preclude coverage to cargo transported under a "contract of hauling," as contrasted with cargo transported by plaintiff in the course of its customary business of purchasing and selling hosiery machinery. Without such a provision, plaintiff would have received protection under the policy even if it had entered the business of "contract hauling," a business which involves a broader risk than the risks which the policy in question was intended to cover.

[6] Plaintiff contends that there is an irreconcilable conflict between paragraph 2 and paragraph 7(d) in that the coverage purportedly provided in the former paragraph is totally eliminated by the latter paragraph. If provisions in an insurance contract are conflicting, the provision favorable to the insured should be held controlling. *Felts v. Insurance Co.*, 221 N.C. 148, 19 S.E. 2d 259. However, we do not find an irreconcilable conflict in the provisions of the two paragraphs. Comprehensive coverage provisions of an insurance contract must be read together with other provisions, which through exclusions, more definitely define the scope of the coverage provided. We note that many insurance contracts have exclusion clauses which limit coverage. This is a well accepted and effective manner of specifically defining the actual coverage intended. Of course an exclusion purporting to totally eliminate the coverage defined in a comprehensive statement of coverage would present an irreconcilable conflict. Here, however, paragraph 7(d) does nothing more than limit the protection afforded to that which would ordinarily be needed by a hosiery machinery dealer who is not in the business of hauling for hire. Had plaintiff desired more comprehensive coverage, it was available, although undoubtedly at a higher premium.

[7] The final question is whether plaintiff's evidence conclusively shows that plaintiff was transporting the machines under a contract or an agreement of hauling or as a bailee for hire at the time they were damaged.

Plaintiff offered evidence tending to show that it agreed to transport the machines in question as a favor for its customer, the owner, and not for the purpose of realizing a profit. It contends that the $8.50 an hour was charged simply to help defray expenses. Plaintiff further argues that the court should have permitted evidence of its total volume of business for the year 1968 for the purpose of showing that transporting the machines in question was only a small part of that total. We do not agree.

The question is whether there was a valid and enforceable contract—not whether it was profitable, or whether it was motivated by a desire on plaintiff's part to incur the favor of a customer. The law does not require the consideration to be in exact proportion to the thing to be done. " 'The slightest consideration is sufficient to support the most onerous obligation,

the inadequacy, as has been well said, is for the parties to con-
sider at the time of making the agreement, and not for the
court when it is sought to be enforced.'" *Young v. Highway
Commission,* 190 N.C. 52, 57, 128 S.E. 401, 403.

In our opinion, plaintiff's evidence shows that the machines
were being transported under a contract of hauling. "When the
plaintiff fails to show coverage under the insuring clause or
establishes an exclusion while making out his prima facie case,
nonsuit is proper." *Williams v. Insurance Co.,* 2 N.C. App. 520,
523, 163 S.E. 2d 400, 402. Since plaintiff's evidence here con-
clusively establishes an exclusion, the directed verdict entered
for defendant was proper.

Affirmed.

Chief Judge MALLARD and Judge HEDRICK concur.