NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY v. CHARLES EDWARD WALTON, REBECCA L. WALTON, GLENDA H. SMITH, HOWARD GLENN SMITH, AND NATIONWIDE MUTUAL INSURANCE COMPANY

No. 9110SC524

(Filed 4 August 1992)

1. **Insurance § 561 (NCI4th)— vehicle purchased by husband—not replacement vehicle under wife's policy**

   A stationwagon purchased by the named insured's husband did not constitute a replacement vehicle covered by the wife's policy at the time of an accident where it was not purchased by the husband during the policy period for which coverage is claimed but was purchased during the previous policy period. The stationwagon was not acquired during the policy period in question merely because the policy in force at the time of the accident was a renewal policy.

   **Am Jur 2d, Automobile Insurance § 234.**

   **Construction and application of "automatic insurance" or "newly acquired vehicle" clause ("replacement," and "blanket," or "fleet" provisions) contained in automobile liability policy. 39 ALR4th 229.**

2. **Insurance § 571 (NCI4th)— wife's automobile policy—vehicle available for husband's regular use—exclusion of husband from coverage**

   The husband was excluded from coverage under the wife's automobile liability policy while he was driving a noncovered vehicle which was available for his regular use.

   **Am Jur 2d, Automobile Insurance § 244.**

   **When is automobile furnished or available for regular use within "drive other car" coverage of automobile liability policy. 8 ALR4th 387.**

APPEAL by defendant from judgment entered 17 January 1991 in WAKE County Superior Court by *Judge Donald W. Stephens*. Heard in the Court of Appeals 18 March 1992.

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Kari Lynn Russwurm, for plaintiff-appellee.*

*LeBoeuf, Lamb, Leiby & MacRae, by Peter M. Foley and Stephanie Hutchins Autry, for defendant-appellant Nationwide Mutual Insurance Company.*

WYNN, Judge.

Glenda Smith, who is married to Howard Smith, was the owner of a 1976 LTD Ford and a 1978 Ford Thunderbird. Prior to May of 1986, both Howard and Glenda drove the 1976 LTD Ford, but Howard was the primary driver. Both cars were insured by North Carolina Farm Bureau Mutual Insurance Company (hereinafter "Farm Bureau") pursuant to an automobile liability policy issued to Glenda.

In May of 1986, the motor of the 1976 LTD Ford was destroyed, and Glenda purchased a 1986 Pontiac Grand Prix, which she owned and drove. The 1986 Pontiac was added to the Farm Bureau policy. Howard then began driving the 1978 Ford Thunderbird back and forth to work.

Howard subsequently purchased a 1971 Ford Stationwagon from a man in Virginia in June of 1986. Howard's uncle arranged for the sale and then drove the vehicle from Virginia to the Smith home. Howard applied for a North Carolina title to the 1971 Ford that same month and received title in August of 1986. Howard did not notify Farm Bureau about the 1971 Ford nor did he obtain insurance from another insurer.

After deciding that the 1978 Thunderbird was not reliable, Howard took the license plate off the 1976 Ford LTD and put it on the 1971 Stationwagon. On 18 December 1986, while operating the 1971 Ford Stationwagon, Howard was involved in an automobile accident with Charles and Rebecca Walton. The automobiles listed in the Declarations of the Farm Bureau policy on the date of the accident were the 1986 Pontiac Grand Prix, the 1978 Ford Thunderbird, and the 1976 Ford LTD.

The Waltons filed suit against the Smiths, for damages sustained as a result of the accident. Farm Bureau provided a defense

N.C. FARM BUREAU MUTUAL INS. CO. v. WALTON

[107 N.C. App. 207 (1992)]

for the Smiths under a reservation of rights. On 7 November 1990, a judgment was entered against Howard Smith in favor of Charles Walton for $20,000 and in favor of Rebecca Walton for $150,000.

On 2 August 1990, Farm Bureau filed this action, seeking a declaration that it was under no obligation to provide either a defense or coverage to the Smiths for the Waltons' claims. Farm Bureau made a motion for summary judgment which the trial court granted. It is from this judgment that Nationwide Mutual Insurance Company, which provided uninsured motorists coverage for the Waltons, appealed.

---

The sole issue presented for our review is whether the trial court erred in ruling as a matter of law that the 1971 Ford Stationwagon operated by Howard Smith at the time of the accident was not covered by the Farm Bureau policy. For the reasons which follow, we affirm the trial court's decision.

When reviewing an insurance policy, this Court must examine the contract as a whole and effectuate the intent of the parties. *Blake v. St. Paul Fire & Marine Ins. Co.*, 38 N.C. App. 555, 557, 248 S.E.2d 388, 390 (1978). Provisions "which extend coverage must be construed liberally so as to provide coverage," *State Capital Ins. Co. v. Nationwide Mutual Ins. Co.*, 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986), while provisions which exclude coverage "are to be construed strictly so as to provide the coverage," *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 355, 172 S.E.2d 518, 523 (1970). Any ambiguities in the contract of insurance are resolved in favor of the insured. *Duke v. Mutual Life Ins. Co.*, 286 N.C. 244, 247, 210 S.E.2d 187, 189 (1974).

*Covered Automobile*

[1] Appellant first contends that the 1971 Ford Stationwagon became a "covered auto" under the Farm Bureau policy at the time that Howard Smith became its owner. We disagree.

The provisions of the Farm Bureau policy pertinent to this issue are as follows:

Throughout this policy, "you" and "your" refer to:

> 1. The "named insured" shown in the Declarations; and

> 2. The spouse if a resident of the same household.

. . .

**"Your covered auto"** means:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become owner:

    a. a private passenger auto; or

    b. a pickup, panel truck or van, not used in any business or occupation other than farming or ranching.

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced.

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations, if you:

    a. acquire the vehicle during the policy period; and

    b. ask us to insure it:

    (1) during the policy period; or

    (2) within 30 days after you become the owner.

It is clear from the language of the policy that Howard falls within the definition of "you" because he was the spouse of Glenda, the named insured, and a resident of the same household. Therefore, since the Smiths did not list the 1971 Stationwagon in the Declarations nor did they ask Farm Bureau to insure it as an additional auto, the Stationwagon must qualify as a replacement vehicle to gain coverage as a covered auto.

Under the law of this State, the term "replacement vehicle" is a term of art in an insurance contract. A "replacement vehicle is one the ownership of which has been acquired after the issuance of the policy and during the policy period, and it must replace the car described in the policy, which must be disposed of or be incapable of further service at the time of the replacement." *State Farm Mutual Auto. Ins. Co. v. Shaffer,* 250 N.C. 45, 52, 108 S.E.2d 49, 54 (1959). *Accord Young v. State Farm Mutual Auto. Ins. Co.,* 18 N.C. App. 702, 198 S.E.2d 54, *cert. denied,* 284 N.C. 125, 199 S.E.2d 664 (1973).

In the case before this Court, the 1971 Ford Stationwagon was not acquired during the policy period. Howard purchased the Stationwagon in June of 1986. The policy period at issue, however,

began on 4 October 1986. We are not swayed by appellant's arguments that the Stationwagon was acquired during the policy period because the policy in force at the time of the accident was a renewal policy. In *Government Emp. Ins. Co. v. Reilly*, 51 Md. App. 208, 441 A.2d 1139 (1982), the Maryland Court of Appeals rejected the same argument for the following reasons:

> The unambiguous meaning of the "policy period" during which the vehicle is required to have been acquired as a condition of coverage is the policy period during which coverage is claimed. If that were not so, applying the reasoning of the court, an entire fleet of simultaneously acquired vehicles would be subject to coverage by describing one only, so long as the insured "intended *eventually*" to replace it, *e.g.*, in the eventuality that the owner incurred an accident while driving one of the undescribed vehicles.

*Id.* at 214-15, 441 A.2d at 1442. For the foregoing reasons, we find that the 1971 Ford Stationwagon was not a replacement vehicle, and, therefore, was not a covered auto under the Farm Bureau policy.

## Exclusions

[2] Appellant next contends that Howard Smith is a covered person under the Farm Bureau policy and is not within any of the exclusions. Appellant asserts that since the Farm Bureau insuring agreement provides that it will pay damages "for which any **covered person** becomes legally responsible because of an auto accident," Farm Bureau is liable even if the 1971 Ford Stationwagon was not a covered vehicle. We disagree.

> The exclusions under the policy provide, in relevant part,
>
> B. We do not provide Liability Coverage for the ownership, maintenance or use of:
>
> 1. Any vehicle, other than **your covered auto**, which is:
>
>    a. owned by you; or
>
>    b. furnished for your regular use.
>
> 2. Any vehicle, other than **your covered auto**, which is:
>
>    a. owned by any **family member**; or
>
>    b. furnished for the regular use of any **family member**.

However, this exclusion does not apply to your maintenance or use of any vehicle which is:

a. owned by a **family member**; or

b. furnished for the regular use of a **family member**.

In *Kruger v. State Farm Mut. Auto. Ins. Co.*, 102 N.C. App. 788, 403 S.E.2d 571 (1991), this Court considered a case similar to the instant case. William and Rebecca Grady were married on 23 November 1985. Rebecca owned a car which was covered by an insurance policy issued by State Farm. William also owned a car prior to marriage, and it was not listed as a covered vehicle on Rebecca's policy. William subsequently collided with a motorcyle and was sued by the driver of the motorcycle, which resulted in a judgment against William. The driver of the motorcyle then filed suit against State Farm, seeking to obtain a determination that State Farm was obligated to provide coverage for William. After deciding that William's car was not a covered auto under the State Farm policy, this Court examined the following State Farm policy exclusions:

We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle, other than **your covered auto**, which is:

a. owned by you; or

b. furnished for your regular use.

2. Any vehicle, other than **your covered auto**, which is:

a. owned by any **family member**; or

b. furnished for the regular use of any **family member**.

*Id.* at 791, 403 S.E.2d at 573. The *Kruger* Court held that the policy exclusions applied and denied coverage for William. *Id.* at 792, 403 S.E.2d at 573.

We find that the decision in *Kruger* is applicable to the case at bar because the pertinent provisions of exclusion in the State Farm policy in *Kruger* and the Farm Bureau policy are identical. The exclusions contained in these policies are common and serve the important purpose of providing coverage for the infrequent or casual use of automobiles not listed in the Declarations, while excluding coverage for automobiles available for the regular use

of family members. *See Whaley v. Great American Ins. Co.*, 259 N.C. 545, 552, 131 S.E.2d 491, 496 (1963). If automobile insurance policies did not contain these limitations, an insured simply could list one vehicle in the Declarations and receive insurance coverage for any number of household vehicles. As such, we conclude that exclusion B. of the Farm Bureau policy applies to Howard Smith's 1971 Ford Stationwagon which was not a covered vehicle and was available for the regular use of Howard Smith.

We have examined appellant's remaining assignments of error and find them to be without merit.

The decision of the trial court is,

Affirmed.

Judges ARNOLD and LEWIS concur.