RONNIE EUGENE DRYE AND CINDY DRYE, PLAINTIFFS v. NATIONWIDE MUTUAL INSURANCE COMPANY, DEFENDANT

No. COA96-751

(Filed 15 July 1997)

**Insurance § 557 (NCI4th)— business automobile policy— ambiguous endorsement—auto not listed in schedule— insured's son as driver—liability coverage**

In an endorsement to a business automobile policy stating that "while" any private passenger automobile owned by the named insured is a covered automobile, family members are insured for purposes of liability coverage for such automobile, the word "while" is ambiguous and could be construed as meaning "whereas/although." The endorsement thus could be construed to provide coverage for the son of the named insured as the driver of an automobile owned by the named insured but not listed on the policy's schedule of covered automobiles.

**Am Jur 2d, Automobile Insurance § 70.**

Appeal by plaintiffs from order entered 23 April 1996 by Judge Marvin K. Gray in Mecklenburg County Superior Court. Heard in the Court of Appeals 26 February 1997.

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Hatcher Kincheloe and Stacy T. Miller, for plaintiff-appellants.*

*Templeton & Raynor, P.A., by Kenneth R. Raynor and Marcey P. Rose, for defendant-appellee.*

DRYE v. NATIONWIDE MUT. INS. CO.

[126 N.C. App. 811 (1997)]

McGEE, Judge.

Plaintiffs appeal from a dismissal of their complaint pursuant to N.C.R. Civ. P. 12(b)(6). The appeal concerns the proper construction of a business automobile insurance policy.

Plaintiffs' allegations are as follows. On 28 December 1989, an automobile collision occurred involving Paul Wayne Dutton, Jr. and Ronnie Eugene Drye in which Drye suffered extensive injuries. The 1989 Pontiac passenger automobile driven by Paul Wayne Dutton, Jr. (Paul Jr.) was owned by his father, Paul Wayne Dutton, Sr. (Paul Sr.) who had a business automobile insurance policy with defendant. At the time, Paul Jr. was living in Paul Sr.'s household. In June 1990, Ronnie and Cindy Drye commenced a civil action against Paul Jr. and his parents (Dutton action). A consent judgment was entered in the Dutton action on 2 November 1993. Pursuant to this judgment, the Duttons assigned all rights to institute an action against defendant in regard to coverage provided by the business automobile policy for the 28 December 1989 collision.

On 3 November 1995, plaintiffs filed this action seeking to recover for injuries sustained by Ronnie Drye in the collision. Defendant answered and moved to dismiss the complaint under N.C.R. Civ. P. 12(b)(6). On 23 April 1996, Judge Marvin K. Gray granted defendant's motion. Plaintiffs appeal.

The sole issue on appeal is whether an endorsement to the policy issued by defendant provides liability coverage for the 1989 Pontiac automobile driven by Paul Jr. during the 28 December 1989 collision. A subsidiary issue is whether the endorsement is ambiguous as to this coverage.

The policy at issue contains initial coverage (initial policy) and additional coverage through an endorsement (endorsement). The initial policy provides coverage for "covered autos" listed on the schedule of covered autos attached to the policy. The 1989 Pontiac is not listed on this schedule. However, plaintiffs claim the endorsement adds coverage for additional private passenger autos, including the 1989 Pontiac. The endorsement provides, in pertinent part:

If you are an individual, the policy is changed as follows:

A. CHANGES IN LIABILITY COVERAGE

* * *

2. PERSONAL AUTO COVERAGE
*While any "auto" you own of the private passenger type"
is a covered "auto" under* LIABILITY COVERAGE:

    a. The following is added to WHO IS AN INSURED:
    *"Family members" are "insured" for any covered
    "auto" you own of the "private passenger type"* . . . .

(Emphasis added).

Plaintiffs contend the above provisions clearly provide coverage for any private passenger automobile owned by Paul Sr. Defendant contends this language only refers to automobiles listed on the schedule of covered autos and that this part of the endorsement only extends coverage to family members using a "covered auto," *i.e.,* autos listed in the schedule.

Upon review of a N.C.R. Civ. P. 12(b)(6) dismissal, the plaintiffs' allegations are taken as true. *Forbis v. Honeycutt,* 301 N.C. 699, 701, 273 S.E.2d 240, 241 (1981). "A claim should not be dismissed for failure to state a claim . . . unless it appears that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Garvin v. City of Fayetteville,* 102 N.C. App. 121, 123, 401 S.E.2d 133, 134 (1991).

Our Supreme Court has summarized the rules of construction for insurance policies as follows:

Where a policy defines a term, that definition is to be used. If no definition is given, nontechnical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended. The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect. If, however, the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations, the doubts will be resolved against the insurance company and in favor of the policyholder. Whereas, if the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein.

*Woods v. Insurance Co.,* 295 N.C. 500, 505-06, 246 S.E.2d 773, 777 (1978). "An ambiguity exists where the language of a contract is fairly

and reasonably susceptible to either of the constructions asserted by the parties." *Glover v. First Union National Bank*, 109 N.C. App. 451, 456, 428 S.E.2d 206, 209 (1993). Furthermore, in insurance policies, "[p]rovisions 'which extend coverage must be construed liberally so as to provide coverage.' " *N.C. Farm Bureau Mutual Ins. Co., v. Walton*, 107 N.C. App. 207, 209, 418 S.E.2d 837, 839 (1992) (quoting *State Capital Ins. Co. v. Nationwide Mutual Ins. Co.*, 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986)). "If provisions in an insurance contract are conflicting, the provision favorable to the insured should be held controlling." *Machinery Co. v. Insurance Co.*, 13 N.C. App. 85, 90, 185 S.E.2d 308, 311 (1971), *cert. denied*, 280 N.C. 302, 186 S.E.2d 176 (1972).

After reviewing the policy as a whole, we read the endorsement as creating ambiguity as to whether it adds coverage for the 1989 Pontiac. The word "while," in particular, enhances this ambiguity. Since this word is not defined in the policy, we apply its ordinary meaning. *See Woods*, 295 N.C. at 505-06, 246 S.E.2d at 777. When used as a conjunction, as here, "while" has been defined as:

> **1a**: during the time that . . . **b**: until the end of time that: as long as . . . **c**: during which time: and during the same time: and meanwhile **2** *archaic*: until . . . **3a**: at the same time that on the contrary: when on the other hand: whereas . . . **b**: in spite of the fact that: although . . . **4**: at the same time that in a similar manner: when correspondingly: and also.

Webster's Third New International Dictionary 2604 (1968); *see also* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 931 (2nd ed. 1995) and Webster's Dictionary of English Usage 957 (1989) (setting forth similar definitions). Commentators on the variant usages of "while" warn the use of "while" to mean "whereas/although" is prone to create ambiguity. *See* Garner, *supra*, at 931; Webster's Dictionary of English Usage, *supra*, at 957. For example, "while" can denote "time" (during the time when) or "concession" (although). *See* Garner, *supra*, at 931. An ambiguity is created when a given use of "while" can be construed as both "although" and "during the time when". *Id.*

Defendant contends "while" simply refers back to a limited coverage under the initial policy only for autos listed in the schedule as "covered autos." However, if this were the case, the phrase would more likely read: "while any auto listed or specifically described on the auto schedule is a covered auto." As used in the endorsement, we

**DRYE v. NATIONWIDE MUT. INS. CO.**

[126 N.C. App. 811 (1997)]

conclude "while" can be reasonably construed in more than one manner. If "while" is construed as "during the time that" or "during the time when," the endorsement can be read as adding family members as additional insureds only when any private passenger auto owned by the insured is a covered auto under the initial policy. When "while" is construed as "whereas/although," the phrase introduced by "while" can be fairly and reasonably construed as conceding the initial policy provides liability coverage for any private passenger auto owned by the insured. In addition, the endorsement, read as a whole, can be fairly and reasonably construed as affirmatively providing coverage in addition to that in the initial policy for any private passenger auto owned by the insured and for a family member's use of such an automobile.

Given the ambiguity, the policy, as amended by the endorsement, must be construed against defendant. *See Woods*, 295 N.C. at 506, 246 S.E.2d at 777. Also, since the endorsement is a provision extending coverage, it " 'must be construed liberally so as to provide coverage.' " *See Walton*, 107 N.C. App. at 209, 418 S.E.2d at 839 (quoting *State Capital Ins. Co.*, 318 N.C. at 538, 350 S.E.2d at 68). In addition, the endorsement provision at issue can be construed as being in direct conflict with the coverage provisions in the initial policy. When such a conflict is present, the provisions most favorable to the insured, *i.e.* those in the endorsement, are controlling. *See Machinery Co.*, 13 N.C. App. at 90, 185 S.E.2d at 311.

Defendant relies upon *N.C. Farm Bureau Mut. Ins. Co. v. Welch*, 118 N.C. App. 554, 455 S.E.2d 906 (1995), *N.C. Farm Bureau Mutual Ins. Co. v. Walton*, 107 N.C. App. 207, 418 S.E.2d 837 (1992), and *Kruger v. State Farm Mut. Auto. Ins. Co.*, 102 N.C. App. 788, 403 S.E.2d 571 (1991). These cases differ significantly from the case on appeal because the policies in these cases were not expanded by endorsements as was the Duttons' policy.

The trial court's order dismissing plaintiffs' complaint is reversed and the case remanded.

Reversed and remanded.

Judges GREENE and WALKER concur.