OPINION
{¶ 1} Plaintiff-Appellant, Western Reserve Mutual Casualty Company ("Western Reserve"), appeals from the judgment of the Franklin County Court of Common Pleas denying its motion for summary judgment and granting summary judgment to defendant-appellee, Jeff Williams ("Williams").
 {¶ 2} The underlying facts of this litigation are not in dispute. On October 14, 1998, Williams was involved in an automobile accident with a vehicle occupied by James and Diane Upperman ("the Uppermans"). The accident occurred when the grain drill that Williams was pulling behind his Ford F-250 pick-up truck went left of center striking the vehicle occupied by the Uppermans. Both James and Diane Upperman were injured, and subsequently filed suit against Williams in the case captionedJames Upperman et al. v. Jeffery William, et al. Franklin C.P. No. 00CVC10-9172. Said action remains pending.
 {¶ 3} Western Reserve issued a Personal Auto Policy ("PAP"), and a Business Auto Policy ("BAP") to Williams. Western Reserve agreed to defend and indemnify Williams up to the policy limits under the PAP, but denied coverage pursuant to the BAP. On January 26, 2004, Western Reserve filed an action for declaratory judgment in the Franklin County Court of Common Pleas seeking a determination of its rights and obligations under the BAP. Western Reserve and Williams filed cross-motions for summary judgment. The trial court denied Western Reserve's motion for summary judgment and granted William's motion for summary judgment. The trial court found that while the Business Auto Coverage Form limited liability coverage to specifically described autos, the Individual Named Insured Endorsement created an entirely new class of covered auto, i.e., the insured's autos that are of the "private passenger type." Western Reserve timely appealed.
 {¶ 4} On appeal, Western Reserve asserts the following three assignments of error:
[1.] THE TRIAL COURT ERRED AS A MATTER OF LAW IN DECLARING THAT APPELLEE WILLIAMS WAS IN A COVERED AUTO AND ENTITLED TO LIABILITY COVERAGE PURSUANT TO APPELLANT WESTERN RESERVE'S BUSINESS AUTO POLICY BASED UPON THE TRIAL COURT'S ERRONEOUS DETERMINATION THAT ALL VEHICLES OF THE "PRIVATE PASSENGER TYPE" WERE COVERED AUTOS DESPITE THE FACT THAT LIABILITY COVERAGE WAS ONLY AFFORDED TO "SPECIFICALLY DESCRIBED `AUTOS'" AND THE VEHICLE THAT APPELLEE WILLIAMS OWNED AND WAS OPERATING AT THE TIME OF THE ACCIDENT WAS NOT SPECIFICALLY DESCRIBED IN THE POLICY DECLARATIONS.
[2.] THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING APPELLEE WILLIAMS TO BE AN INSURED PURSUANT TO APPELLANT WESTERN RESERVE'S BUSINESS AUTO POLICY FOR THE OCTOBER 14, 1998 ACCIDENT.
[3.] THE TRIAL COURT ERRED IN FAILING TO CONSIDER UNREBUTTED EXTRINSIC EVIDENCE AS TO THE INTENT OF THE PARTIES ASSUMING, ARGUENDO, THAT THE INDIVIDUAL NAMED INSURED ENDORSEMENT IN THE APPELLANT WESTERN RESERVE'S BUSINESS AUTO POLICY WAS AMBIGUOUS (WHICH IT IS NOT), TO RESOLVE THE AMBIGUITY.
 {¶ 5} Civ.R. 56(C) states that summary judgment shall be rendered forthwith if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
 {¶ 6} Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 629, citing Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64, 65-66. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim."Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Once the moving party meets its initial burden, the nonmovant must then produce competent evidence showing that there is a genuine issue for trial. Id. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. Murphy v.Reynoldsburg (1992), 65 Ohio St.3d 356, 358-59.
 {¶ 7} Appellate review of summary judgments is de novo. Koosv. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588;Midwest Specialties, Inc. v. Firestone Tire Rubber Co.
(1988), 42 Ohio App.3d 6, 8. We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. SeeDresher; supra; Coventry Twp. v. Ecker (1995),101 Ohio App.3d 38, 41-42.
 {¶ 8} Since the underlying facts of this case are undisputed, there is no genuine issue of material fact for this court to consider. Rather, this case turns on the interpretation of the BAP and its endorsements. "The fundamental goal in insurance policy interpretation is to ascertain the intent of the parties from a reading of the contract in its entirety, and to settle upon a reasonable interpretation of any disputed terms in a manner calculated to give the agreement its intended effect."Burris v. Grange Mut. Cos. (1989), 46 Ohio St.3d 84, 89. "[I]nsurance contracts must be construed in accordance with the same rules as other written contracts." Hybud Equip. Corp. v.Sphere Drake Ins. Co., Ltd. (1992), 64 Ohio St.3d 657, 665. Words and phrases used in insurance policies "`must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined.'" Tomlinson v.Skolnik (1989), 44 Ohio St.3d 11, 12, quoting Gomolka v. StateAuto. Mut. Ins. Co. (1982), 70 Ohio St.2d 166, 167-168.
 {¶ 9} Ambiguities in insurance policies should be construed liberally in favor of coverage. Yeager v. Pacific Mut. Life Ins.Co. (1956), 166 Ohio St. 71, paragraph one of the syllabus. However, when the language used is clear and unambiguous, a court must enforce the contract as written, giving words used in the contract their plain and ordinary meaning. Cincinnati Indemn.Co. v. Martin (1999), 85 Ohio St.3d 604, 607. A policy is not to be read as to extend coverage to absurd lengths or to be inconsistent with logic or the law. Lovewell v. Physicians Ins.Co. of Ohio (1997), 79 Ohio St.3d 143, 148.
 {¶ 10} It is undisputed that, pursuant to the Business Auto Coverage Form of the BAP, coverage is not afforded to Williams for the October 1998 accident because the Business Auto Coverage Form limits liability coverage to autos that are specifically described in the policy. The Business Auto Policy Declarations Form provides in part:
ITEM TWO — SCHEDULE OF COVERAGES AND COVERED AUTOS. This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO section of the Business Auto Coverage Form next to the name of the coverage.
(Business Auto Policy Declarations P1.)
 {¶ 11} The symbol next to "Liability" coverage in the Declarations of the BAP is symbol "7." Pursuant to the BAP, Symbol 7 is defined as:
7 = SPECIFICALLY DESCRIBED "AUTOS". Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in ITEM THREE).
(Business Auto Coverage Form P1.)
 {¶ 12} The two vehicles described in Item Three of the declarations are a 1986 Freightliner Tractor and a 1998 Timpte 40FT Crain TLR. Thus, the parties agree that there is no coverage afforded to Williams pursuant to the Business Auto Coverage Form for the October 1998 accident because Williams was driving his Ford F-250 pick-up truck at the time of the accident.
 {¶ 13} However, Williams contends that a standard endorsement to the BAP, entitled the Individual Named Insured Endorsement ("endorsement"), changed the policy and provided coverage to Williams for any private passenger auto that he owned regardless of whether it was described in the policy or whether a premium was paid for it. The endorsement provides in part:
This endorsement modifies insurance provided under the following:
BUSINESS AUTO COVERAGE FORM GARAGE COVERAGE FORM TRUCKERS COVERAGE FORM BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
If you are an individual, the policy is changed as follows:
A. CHANGES IN LIABILITY COVERAGE
* * *
2. PERSONAL AUTO COVERAGE
While any "auto" you own of the "private passenger type" is a covered "auto" under LIABILITY COVERAGE:
a. The following is added to WHO IS AN INSURED:
"Family members" are "insureds" for any covered "auto" you own of the "private passenger type" and any other "auto" described in paragraph 2.b. of this endorsement.
b. Any "auto" you don't own is a covered "auto" while being used by you or by any "family member" except:
1) Any "auto" owned by any "family members".
2) Any "auto" furnished or available for your or any "family member's" regular use.
3) Any "auto" used by you or by any of your "family members" while working in a business of selling, servicing, repairing or parking "autos".
4) Any "auto" other than an "auto" of the "private passenger type" used by you or any of your "family members" while working in any other business or occupation.
* * *
C. ADDITIONAL DEFINITIONS
1. The following is added to the DEFINITIONS Section:
* * *
3. When the phrase "private passenger type" appears in quotation marks it includes any covered "auto" you own of the pick-up or van type not used for business purposes, other than farming or ranching.
(Form CA 99 17 12 90, P1-2.)
 {¶ 14} It is Williams' position that to qualify for the coverage under the endorsement, the named insured must be an individual, and the vehicles owned by Williams must be of the private passenger type, which is defined to include a pick-up or van type auto owned by the insured not used for business purposes, other than farming or ranching. Since Williams owned the Ford F-250 pick-up truck and was operating it for farming purposes at the time of the accident, Williams contends that this pick-up truck is a covered auto under the liability coverage provided by the endorsement.
 {¶ 15} To support his argument that the endorsement provides coverage for the October 1998 accident, Williams relies upon a decision from North Carolina that held that the use of the word "while" in an endorsement, similar to the one at issue here, was ambiguous. See Drye v. Nationwide Mut. Ins. Co. (1997),126 N.C. App. 811, 487 S.E.2d 148. In Drye, the plaintiff argued that although the initial policy provided coverage only for covered autos specifically described in the policy, the endorsement added coverage for additional private passenger autos. The court found that the endorsement created an ambiguity as to whether or not coverage was afforded to private passenger autos. Specifically, the court found that the word "while" could be construed as either "during the time when," in which case "the endorsement [could] be read as adding family members as additional insureds only when any private passenger auto owned by the insured is a covered auto under the initial policy," or as "whereas/although," in which case the language could be "fairly and reasonably construed as conceding the initial policy provides liability coverage for any private passenger auto owned by the insured." Id. at 815. Due to the ambiguity found by the court, the policy was construed against the insurer and coverage was afforded to the plaintiff. Williams asks this court to do the same.
 {¶ 16} However, in analyzing this very issue, three courts have disagreed with the court's reasoning and finding of ambiguity in Drye. See Boyd v. Cruze (Feb. 13, 1995), Tenn.App. No. 03A01-9410-CV-00382, 1995 Tenn. App. LEXIS 81;Engelhardt v. Concord Group Ins. Co. (Apr. 9, 2002), N.H.Super.Ct. No. 00-E-0299; Allstate v. Bridges (W.D.Va. 2004), 302 F.Supp.2d 643. In Boyd, a Tennessee Appellate Court found that even though the endorsement was "inartfully drafted," its plain meaning was not ambiguous and did not provide coverage for "private passenger type" cars owned by the plaintiff. Id. at *3. The court stated that the language clearly referred to the period of time during which vehicles, if any, were listed in the liability coverage declarations. Id. at *4. "The endorsement neither adds nor removes covered autos," but "deals with other changes," such as additional insureds, definitions, etc. Id. at *5-6.
 {¶ 17} In Engelhardt, the Superior Court of New Hampshire also rejected the argument that the term "while" was ambiguous. The court viewed the language in context as it related to the rest of the endorsement and the policy, and stated, "`while' when read in context can only mean `so long as,' i.e., `so long as any auto you own of the private passenger type is a covered auto, [certain provisions apply].'" Id. at 8.
 {¶ 18} In Allstate, the United States District Court for the Western District of Virginia found that when viewing the insurance policy as a whole, its language was not ambiguous and did not afford coverage to an owned vehicle operated by an insured at the time of the accident because the vehicle was not described in the policy. The court stated, "[a]lthough `while' can mean `whereas' or `although,' considering the Policy as a whole, such an interpretation is unreasonable. Interpreting `while' as meaning `so long as' or `during the time when' harmonizes the Endorsement with the portion of the Policy that provides that Bridges' van was the only covered auto." Id. 645-646. The court reasoned that to find otherwise would result in the endorsement extending coverage "to all vehicles owned by Bridges, no matter what the number, all for payment of the premium for one vehicle." Id. The court concluded in finding that such strained construction would be contrary to the clear meaning of the policy and foreign to the context of the endorsement.
 {¶ 19} Appellee urges this court to follow Drye and suggests that North Carolina's rules of construction are identical to those applied in Ohio. The Drye court stated:
Where a policy defines a term, that definition is to be used. If no definition is given, nontechnical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended. The various terms of the policy are to be harmoniously construed, and if possible, everyword and every provision is to be given effect.
 Drye, supra at 813 (Emphasis added.)
 {¶ 20} However, even though North Carolina's rules of construction stated in the Drye opinion are similar to those of Ohio, they are not identical as it is not required under Ohio law to give effect to every word and every provision in an insurance contract. The Supreme Court of Ohio has recognized that, "[i]nsurance policies are no longer written in manuscript for each policyholder, but rather are standard forms designed to insure a variety of entities, including individuals. `There is nothing sinister about an insurer's use of a `one size fits all' policy form.'" Westfield Ins. Co. v. Galatis (2003),100 Ohio St.3d 216, 226, citing Seaco Ins. Co. v. Davis-Irish,300 F.3d at 87. In Galatis, the court explained that "[i]n Ezawa, we relied upon the Scott-Pontzer definition of `you' to find that the second class of insureds on Form CA 2133 — `if you are an individual, any family member' — extends uninsured motorist coverage to a family member of an employee. In addition to relying upon the logic of Scott-Pontzer, Ezawa also erred by not interpreting the second class of insureds as a nullity." Id.
 {¶ 21} In the case sub judice, the endorsement is a standard endorsement that can be utilized with the four different types of policies listed at the top of the endorsement. The endorsement, in Section A, is accomplishing two things: (1) it limits the fellow employee exclusion; and (2) it extends coverage to family members of an insured for any covered auto owned by the insured that is of the private passenger type. It is permissible under Ohio law for these provisions to be a nullity if no covered autos are of the private passenger type, which is the circumstance at bar. However, because the court in Drye was straining to give effect to every word and provision in the endorsement, it is not permissible under North Carolina for these provisions to be a nullity. For this reason, we do not find North Carolina's interpretation of the endorsement to be persuasive.
 {¶ 22} Viewing the language in context as it relates to the endorsement and the policy, we find that neither the policy nor the endorsement is ambiguous and coverage is not extended to Williams for the October 1998 accident. The goal of insurance policy interpretation is to ascertain the intent of the parties from a reading of the contract in its entirety, and to settle upon a reasonable interpretation to give the agreement its intended effect. Burris, supra. Even though the word "while" may be defined as "whereas/although," interpreting it to mean "so long as" harmonizes the endorsement and the policy and clearly refers to the period of time during which vehicles were listed in the liability coverage declarations. Allstate, supra. To construe the language in the manner Williams' suggests, or any other manner, is unreasonable as it would provide coverage for any number of owned autos, while a premium is only paid for specifically described autos in the policy. The endorsement at issue does not add or remove covered vehicles, rather it modifies coverage for vehicles that are already covered autos. Given the policy language as a whole, we find that there is no ambiguity in the endorsement or the BAP and that the endorsement is extended to the covered autos specifically described in the BAP. Thus, the trial court erred in granting summary judgment for appellee and denying summary judgment to appellant. Accordingly, we sustain appellant's first assignment of error.
 {¶ 23} For the foregoing reasons, appellant's first assignment of error is sustained, and appellant's second and third assignments of error are rendered moot. The judgment of the Franklin County Court of Common Pleas is reversed, and upon remand the court shall enter declaratory judgment for Western Reserve.
Judgment reversed and cause remanded with instructions.
French and Christley, JJ., concur.
Christley, J., retired of the Eleventh Appellate District, assigned to active duty under authority of Section 6(C), ArticleIV, Ohio Constitution.